WESTCOTT v. THOMPSON and ATKINSON.

A brewer sold and delivered sixty-seven barrels of ale, bearing his brand, to a retailer, upon the agreement that the barrels should be returned after the ale was drawn, but if any were not returned he should pay $2 a piece for them: *Held*, that the property in the barrels remained in the vendor, and that the specification of their value operated not to give an election to the vendee to retain them at that price, but to fix the damages in respect to such as he should be unable to return.

APPEAL from the Supreme Court. Action for an alleged unlawful detention of beer barrels. The appeal was brought

on for argument at a former term of this court, when it was ordered by the court that the appeal be dismissed, unless the appellant procure the return to be amended in respect to the finding of facts by the referee. A report of the case, stating briefly the object of the action and the proceedings therein, both in the Supreme Court and in this court, may be found in 16 *N. Y. R.*, 613. The appellant procured, under an order of the Supreme Court, a further report from the referee, which, by the direction of that court, was annexed to the judgment roll and incorporated in the return to this court. This further report states, as facts found by the referee: 1. That the plaintiff was a manufacturer and seller of ale in the city of New York; 2. That the plaintiff was the owner of the sixty-seven barrels mentioned in the complaint and which were filled with ale manufactured and owned by the plaintiff; that he sold said ale to one Ham, it being agreed between them that said Ham might retain said barrels until the ale was drawn therefrom, and then said barrels should be returned to the plaintiff, but if any were not returned said Ham should pay two dollars a piece for them, which latter part of said agreement, as understood by the parties, had reference only to any barrels that, during their possession by said Ham, might be lost or destroyed or rendered incapable of return by accident or necessity; 3. That said agreement was in accordance with the prevailing general usage of trade in the manufacture and vending of ale, and that the defendants were, before receiving said barrels, aware of such usage and were purchasers of ale and retailed it, and their course of business was to collect the empty barrels when the ale was out and return them to the manufacturers and vendors of the ale; 4. That said barrels first mentioned bore the plaintiff's brand and were so marked as to be distinguished from other barrels, in which condition they subsequently, after the ale had been drawn therefrom, came to the possession of the defendants, who removed some of the marks thereon in order to destroy that evidence

Westcott *v.* Thompson.

of ownership; 5. That while the barrels were so in the pos-
session of the defendants the plaintiff demanded them of the
said defendants, who refused to give them up and retained
the same, claiming to be owners thereof, the said defendants
having previously purchased the same of said Ham or of other
persons who had made such purchase of him; that some of
such purchases by the defendants were made at about half
the fair value of the barrels. It is also stated that upon
these facts the referee adjudged, as matter of law, that the
defendants were owners of said barrels and were entitled to
retain the possession of the same. The appeal having been
again brought on for argument, was argued by

*S. Beardsley,* for the appellant

*William Tracy,* for the respondents.

STRONG, J.  The referee before whom this action was
tried found, as matter of fact, that on the sale of the ale
by the plaintiff to Ham it was agreed between them that
Ham might retain the barrels until the ale was drawn and
then the barrels should be returned to the plaintiff; but if any
was not returned Ham should pay two dollars each for them
The only question in the case upon the merits is, whether,
under the agreement, Ham was authorized to sell the barrels.
The counsel for the respondents claim, as the substance of
the agreement, that the barrels were to be returned within
a reasonable time after the ale was drawn out, or paid for
at the rate mentioned. If this is a fair interpretation, the
legal effect of the contract was, doubtless, as is insisted by
him, to vest the title to the barrels in the purchaser of the
ale. It was a sale of the barrels in connection with the ale,
with the option in the purchaser of returning the barrels or
keeping and paying for them. The plaintiff could not
thereafter reclaim the barrels; all his dominion over them
and right to them was gone, unless and until they should

be returned in pursuance of the right of election in the purchaser. But there is a difficulty in adopting this construction, arising from the express provision in the contract, "that said barrels should be returned to the plaintiff," immediately preceding the clause fixing the amount to be paid for each barrel if they should not be returned. No force whatever is given by such a construction to that provision; and it is a sensible and established rule in the exposition of a contract, that effect must be given to every part, if reasonably practicable. We must therefore look for some other meaning—one having regard to each provision agreed on—and it is easy to find a plain one of that character. The barrels were to be returned, and if not returned two dollars each to be paid for them; that is, two dollars should be paid for each barrel not returned; not surely two dollars each for the whole number, if all should not be returned. Viewing the contract alone, the parties manifestly intended that the plaintiff should have the barrels again after the ale was drawn; but they contemplated the possibility that some of them might be lost or destroyed, and thereby the purchaser of the ale be unable to return all of them; and, in reference to that, further intended to fix a price to be paid as the value of each barrel which should not for that reason be redelivered to the plaintiff. This interpretation is still more apparent, if the evidence of the business of the parties to the contract be considered in con nection with the terms of the contract, as may properly be done for the purpose of explanation, assuming the terms to be at all ambiguous as to their meaning. The plaintiff was largely engaged in the manufacture and sale of ale, which necessarily required a great many barrels, and it may reasonably be supposed that it was for his interest, after the ale sold by him from time to time should be consumed, that the barrels should be returned to him that he might refill and further use them in the business. They would be still more important on account of his having upon the barrels

a brand or trade mark by which his ale might be distinguished from that of other manufacturers. The other party to the contract purchased ale of the plaintiff extensively for sale, and sold it to others, receiving back from his customers the barrels when empty; and it is highly probable that it was for his interest to return the barrels to the plaintiff, rather than to purchase them. In view of the business and interests of the parties as aforesaid, it was quite natural that in the dealings between them they should provide for the redelivery to the plaintiff of the barrels, so far as could be done, and for the payment of a fixed sum, so far as they could not be returned by reason of losses or destruction, which could hardly fail sometimes to occur. The evidence of usage in similar cases, in the absence of an express contract—if it may be regarded in interpreting the agreement in question—also leads to a similar conclusion as to the true meaning of the agreement. But neither evidence of the business of the parties nor of usage could be received to contradict the agreement or control its legal operation. ( *Wadsworth* v. *Alcott*, 2 *Seld.*, 64; *Hinton* v. *Locke*, 5 *Hill*, 437.)

I lay out of view the finding of the referee, as a fact, that the parties understood it as above interpreted. The understanding of parties to a contract is to be learned from the terms of the contract, if plain and unambiguous; and when not so, from those terms with such explanatory facts as the law allows to be proved: and the question of what was their understanding, whether to be determined upon the face of the agreement alone, or upon extrinsic facts in connection with it, is always a question of law.

The judgment of the court below must be reversed and a new trial ordered.

All the judges concurring,

Judgment reversed and new trial ordered.