## Court of Appeals.

October 3, 1893.

### PEOPLE v. WILLIAM P. CANNON.

### PEOPLE v. HUGH QUINN.

### PEOPLE v. GEORGE Z. BARTHOLF.

(54 St. Rep. 431; 139 N. Y. 32.)

1. Bottles—Constitutional law.

Chapter 377 of 1887, as amended by chapter 181 of 1888, is constitutional.

Vol. X—63

**2. Same.**

The first section of this act refers to the use of the empty bottles by some one other than the owner of the marks thereon, and after the original contents of such bottles have been taken out, and then unlawfully using or trafficing in the empty bottles.

**3. Same—Evidence.**

In criminal prosecutions, the legislature may, with some limitations, enact that when certain facts have been proved they shall be prima facie evidence of the existence of the main fact in question.

**4. Same—Presumption.**

In all cases, the jury must be satisfied of guilt beyond reasonable doubt and the enactment, in this act, in regard to the presumption, merely permits, but cannot in effect direct, the jury to convict under any circumstances.

**5. Same.**

This species of legislation is to be confined to those cases, where the explanation of the fact from which the presumption is to rise, is peculiarly within the knowledge of the party who is accused.

**6. Same.**

The effect of such presumption is to call upon the accused for some explanation.

**7. Same.**

A momentary or conditional possession, fairly explained and believed by the jury or in regard to which they were doubtful, will rebut the statutory presumption.

**8. Same.**

Proof that the bottles in question had been sold, or written authority to deal in them had been given by the owner to some one else, will also be a defense.

**9. Same.**

The statute is so framed that, if the proprietor or owner of the marked bottles has once sold them, no matter to whom, the bottles may thereafter be freely dealt in.

**10. Same—Security for return.**

The taking of security for the return of the bottles from the party to whom they were delivered, so long as there is no evidence of an agreement and the party is under no legal obligation to return them, but has the right to retain them if he choose to leave

the money deposited as a payment for them, amounts in law to a sale of them at the election of the party to whom they are delivered.

These are appeals from convictions of the above defendants, affirmed by the general term of the supreme court in the first department. Each defendant was convicted upon a separate indictment and trial of a violation of what is described in the various records as the "Bottling Act," and known as chapter 377 of the Laws of 1887, as amended by chapter 181 of the Laws of 1888.

The first three sections of the act are here alone material. The title of the act and the sections spoken of read as follows: "An act to protect the owners of bottles, boxes, siphons and kegs used in the sale of soda waters, mineral and aerated waters, porter, ale, cider, ginger ale, milk, cream, small beer, lager beer, weiss beer, white beer or other beverages.

"§ 1. Any and all persons and corporations engaged in manufacturing, bottling or selling soda waters, mineral or aerated waters, porter, ale, beer, cider, ginger ale, milk, cream, small beer, lager beer, weiss beer, white beer, or other beverages, or medicines, medical preparations, perfumery, compounds or mixtures, in bottles, siphons, tins or kegs, with his, her, its or their name or names or other marks or devices branded, stamped or engraved, etched, blown, impressed or otherwise produced upon such bottles, siphons, tins or kegs, or the boxes used by him, her, it or them, may file in the office of the clerk of the county in which his, her, its or their principal place of business is situated, and also the office of the secretary of state, a description of the name or names, marks or devices so used by him, her, it or them, respectively, and cause such description to be printed once in each week for three weeks successively in a newspaper published in the county in which said notice may have been filed as aforesaid, except that in the city and county of New York and the city of Brooklyn, in the county of Kings, such publication shall be made for three weeks successively in two daily newspapers published in the cities of New York and Brooklyn, respectively.

"§ 2. It is hereby declared to be unlawful for any person or persons, corporation or corporations, to fill with soda waters,

mineral or aerated waters, porter, ale, cider, ginger ale, milk, cream, beer, small beer, lager beer, weiss beer, white beer or other beverages, or with medicine, medical preparations, perfumery, compounds or mixtures, any bottle, box, siphon, tin or keg, so marked or distinguished as aforesaid with or by any name, mark or device, of which a description shall have been filed and published as provided in section one of this act, or to deface, erase or obliterate, cover up or otherwise remove, or conceal, any such name, mark or device thereon, or to sell, buy, give, take or otherwise dispose of or traffic in the same without the written consent of, or unless the same shall have been purchased from the person or persons, corporation or corporations whose mark or device shall be or shall have been in or upon the bottle, box, siphon, tin or keg so filled, trafficked in, used or handled as aforesaid. Any person or persons or corporations offending against the provisions of this section shall be deemed guilty of a misdemeanor, and shall be punished for the first offense by imprisonment not less than ten days nor more than one year, or by a fine of fifty cents for each and every such bottle, box, siphon, tin or keg so filled, sold, used, disposed of, bought or trafficked in, or by both such fine and imprisonment, and for each subsequent offense by imprisonment not less than twenty days nor more than one year; or by a fine of not less than one dollar nor more than five dollars for each and every bottle, box, siphon, tin and keg so filled, sold, used, disposed of, bought or trafficked in, or by both such fine and imprisonment in the discretion of the magistrate before whom the offense shall be tried.

"§ 3. The use by any person other than the person or persons, corporation or corporations, whose device, name or mark shall be or shall have been upon the same, without such written consent or purchase as aforesaid, of any such marked or distinguished bottle, box, siphon, tin or keg, a description of the name, mark or device whereon shall have been filed and published as herein provided, for the sale therein of soda waters, mineral or aerated waters, porter, ale, cider, ginger ale, milk, cream, beer, small beer, lager beer, weiss beer, white beer or other beverages, or of any articles of merchandise, medicines, medical preparations, perfumery, compounds, mixtures or prep-

arations, or for the furnishing of such or similar beverages to customers, or the buying, selling, using, disposing of or trafficking in any such bottles, boxes, siphons, tins or kegs by any person other than said persons or corporations having a name, mark or device thereon, or such owner without such written consent, or having by any junk dealer or dealers in second hand articles possession of any such bottles, boxes, siphons, tins or kegs, a description of the marks, names or devices wherein shall have been so filed and published as aforesaid, without such written consent, shall and is hereby declared to be presumptive evidence of the said unlawful use, purchase and traffic in of such bottles, boxes, siphons, tins or kegs."

There were three counts in each indictment, one for unlawfully buying from a person to the grand jury unknown, one for unlawfully taking from a person to the grand jury unknown, and one for unlawfully trafficking in and disposing of in a manner and by means to the grand jury unknown certain bottles (describing them as having marks on them, etc., as provided for in the first section of the above act). The defendants are dealers in, among other articles, of second-hand bottles of all descriptions. They are among the largest dealers in those articles in the city of New York, have been engaged in that business for a number of years, and their stock on hand at the time when the occurrences herein spoken of took place reached in each case to the number of several hundred thousand bottles. Neither of the defendants was able to tell of whom or where he purchased the bottles which are the subject of complaint in his case. They purchase all kinds of bottles from whoever comes with them, if satisfied they have not been stolen. Their purchases come from all over the country by rail and in vessels and packed in boxes and barrels, and they are ignorant of the kinds of bottles that thus come until they have been taken from the various railroad stations or vessels and brought to their stores and sorted out. The defendants claimed to be ignorant of the possession of any of the classes of bottles described in the indictments until their places were visited by the police under a search warrant sworn out by a detective employed by an association of manufacturers of soda waters, beer, etc., and who were the owners of bottles registered as provided for by the law.

Among all the bottles that were in the possession of the defendants, there are involved in this proceeding but very few, as the evidence shows there were only found an insignificant quantity of registered bottles as compared with the immense number of others which were on hand and dealt in by the defendants.

Everett P. Wheeler, Wm. J. Gaynor and A. W. Tenney, for appellants.

Wm. Travers Jerome, for respondents.

PECKHAM, J.—These prosecutions have been instituted for the purpose of obtaining a decision in regard to the validity of the law under which the convictions have been secured. Counsel for both parties have so stated, and the courts below have distinctly ruled upon the various propositions raised, so that the constitutionality of the statute might be fairly tested.

It is claimed that the act deprives all persons other than the manufacturers of the right to traffic in or give away sparkling or aerated liquors or beer which have ever been placed in a trade-mark bottle. It is said that if the manufacturer refuses to sell the bottle, he in effect prohibits the sale or gift of that which is contained in it, except over the counter, and it is urged that the legislature cannot grant to the manufacturer such a monopoly.

It is needless to speculate as to the powers of the legislature upon this subject, because we are of the opinion the statute is not susceptible of any such construction.

It is made unlawful for anyone to fill up with soda waters, etc., any bottle marked and distinguished as in the first section of the act is provided, or to deface, erase or obliterate any such mark on such bottle, or to sell, etc., or to otherwise dispose of, or traffic in the same, without the written consent of, or unless the same have been purchased from the person whose mark is on the bottle. This provision of the act refers to the use of these empty bottles by some one other than the owner of the marks thereon, and after the original contents of such bottles have been taken out, and then unlawfully using or trafficking in the empty bottles.

After the retail dealer or anyone else has purchased the soda water or beer from the manufacturer, and the same has been delivered to him packed in the bottles thus marked, he is not prevented by anything in the statute from himself selling such soda water or beer and delivering the same to the purchaser packed in the same bottles in which it was delivered to him from the manufacturers. This process may be continued indefinitely. The act is not aimed at the sale and delivery of the water or beer packed in the original bottles as it came from the manufacturer, but it is aimed at an unlawful dealing in empty bottles that have been marked, and after their original contents have been used. If otherwise, it is clear that an enormous amount of the business of the manufacturers would be curtailed. It is a fact which everyone knows, that large amounts of the liquors originally put up in these bottles are sold by the manufacturers to the retail dealers, who sell them to the customers, who take them away in the original bottles in which the manufacturers delivered them to the retail dealers, and it cannot be contended with any degree of plausibility, as it seems to us, that there is anything in the language of the statute, properly construed, which prohibits such a dealing in and delivery of the liquors by anyone into whose possession and ownership they have lawfully come.

Nor is there any just foundation for the assertion that the act necessarily destroys or unlawfully decreases the trade in empty bottles, which is a fair trade and one entitled to the equal protection of the law. The act contains no provision in regard to empty bottles in general. It forbids the use or traffic in certain kinds of bottles without the written consent of the owners of the marks on them, or unless they have themselves once sold the bottles. It is not necessary that they should have sold to the person using them. A sale of the bottles to anyone thereafter precludes the application of the provisions of the statute. A bottle that has been marked as described in the first section, and has thereafter been used by the owner of the marks for the purpose of identifying in the market the particular goods manufactured by him and put up in such bottles, ought not to be used for other purposes against the will of the manufacturer, so long as he has not sold the bottles to anyone, nor authorized

anyone to use or traffic in them; in other language, so long as he continues the owner of the bottles.

And this kind of use of traffic the law is intended to prevent.

Under the broadest definition of the term liberty, as used in the constitution, it is not probable that anyone would contend that it covers, or ought to cover, the liberty of dealing in property which the original owner has not sold to anyone or authorized anyone else to deal in. And yet the claim that the act destroys the trade in second-hand bottles would lead to this result if it were allowed. Because the act prohibits the dealing in the property of a third person without his consent, it may be that the business of the second-hand bottle dealer is affected so far as to necessitate further precautions in regard to making purchases than would otherwise be necessary. Before purchasing second-hand bottles he must be assured that the person selling has the right to sell them, and that he, the dealer, has the right to buy them. This may require more of an inspection of the kinds of bottles purchased than the dealer has heretofore been accustomed to give, but there is nothing improper in such obligation, and if he fails to perform it he must omit it at his peril. The act in question has a tendency to prevent frauds upon the public in the way of filling these bottles with articles of the same nature as originally put in them, but not manufactured by the owners of the marks. Even though there may be a section or sections of the Penal Code which cover such a subject, that does not render the further enactment of the legislature upon the same subject void. If naturally there may be trouble in showing that the person of whom the second-hand dealer purchased had himself obtained the bottles of some one who had purchased them from the manufacturers or who had written consent to deal in, use or traffic in them, such fact is only an additional reason for not purchasing such bottles until it is clear that they may be lawfully purchased. The act does, undoubtedly, in this respect seriously hamper anyone dealing in these kinds of empty bottles. I can, however, see no constitutional objection to the enactment based on that ground. A mere possessor of one of these empty bottles may wish to fill it without using the trade-mark. It is true he is prohibited from effacing the trade-mark, or erasing it, and this, it is said,

destroys all property in the bottle, because the person who possesses it can make no earthly use of it. But in the case to which the act is applicable, the person who has the bottle in his possession has no property right in it, and never did have. The consequence may be that he has no right to use the bottle himself, and that he does not stand in a position with regard to the person from whom he procured the bottle and contents to require such person to take it back and give him its value, or an agreed sum, after the contents have been used. This may be his misfortune, but it does not create any right. As he never owned the bottle, or had any property right in it of that nature, and that does not and cannot affect him.

I fail to find any constitutional defect in the statute so far as its general features under review in these cases are concerned.

There is a ground of invalidity now to be noticed that has been urged in regard to that portion of the act which relates to matters of evidence. That portion of section 3 of the act which provides that the having by any junk dealer, or dealers in second-hand articles, possession of these kinds of marked bottles, or kegs, without the written consent of the owner of such marks, shall be presumptive evidence of the unlawful use, purchase and traffic in such bottles, is asserted to be unconstitutional as an invasion by the legislature of the domain of the judicial branch of the government.

It is said the legislature can create and define a crime, but it cannot declare what shall be prima facie evidence of its commission. Whether the crime as defined by the legislature has been committed by an accused is a question for the court and jury, and it is claimed that no direction to the court or jury as to what shall be considered prima facie proof can be given by the legislature. It may be remarked at the outset that this question does not arise in the case of Cannon. The defendant in that case agreed upon a state of facts upon which the judgment of the court and jury was requested, and in the statement it was agreed that the corporation which owned the marks and bottles in question had never granted any written or oral consent that the bottles should be used or trafficked in and had never sold or given away any such bottle.

In the other two cases the question is fairly up, and must be decided.

The legislature of this state possesses the whole legislative power of the people, except so far as such power may be limited by our constitution. Bank of Chenango v. Brown, 26 N. Y. 467. The power to enact such a provision as that under discussion is founded upon the jurisdiction of the legislature over rules of evidence, both in civil and criminal cases. This court has had lately the question before it. B'd of Excise Com'rs v. Merchant, 103 N. Y. 143; 2 St. Rep. 760. The act in that case provided that whenever any person was seen to drink in a shop, etc., spirituous liquors which were forbidden to be drank therein, it should be prima facie evidence that such liquors were sold by the occupant of the premises or his agent with the intent that the same should be drank therein. The defendant was an occupant of premises where liquor could not be legally sold to be drank there, and he was prosecuted for selling the same in violation of the act. The only evidence of a sale by the accused occupant was the fact that a person was seen to drink liquor upon the premises, and a conviction was asked for under the provisions of the act quoted. The defendant was convicted, and his counsel urged that the act was unconstitutional on the ground that it violated the constitutional guarantees of due process of law and trial by jury. It was held the claim was unfounded, and that the general power of the legislature to prescribe rules of evidence and methods of proof was undoubted and had not been legally exercised in that case. It is true it was a case for the recovery of a penalty and was brought by the commissioners of excise and a civil judgment for damages was recovered. It was, however, treated as a quasi criminal case and criminal prosecutions were cited in support of the principle decided in it.

It cannot be disputed that the courts of this and other states are committed to the general principle that even in criminal prosecutions the legislature may, with some limitations, enact that when certain facts have been proved they shall be prima facie evidence of the existence of the main fact in question. See cases cited in 103 N. Y., supra. The limitations are that the fact upon which the presumption is to rest must have some fair

relation to, or natural connection with the main fact. The inference of the existence of the main fact because of the existence of the fact actually proved must not be merely and purely arbitrary, or wholly unreasonable, unnatural or extraordinary, and the accused must have in each case a fair opportunity to make his defense, and to submit the whole case to the jury, to be decided by it after it has weighed all the evidence and given such weight to the presumption as to it shall seem proper. A provision of this kind does not take away or impair the right of trial by jury. It does not in reality change the burden of proof. The People must at all times sustain the burden of proving the guilt of the accused beyond a reasonable doubt. It, in substance, enacts that, certain facts being proved, the jury may regard them, if believed, as sufficient to convict, in the absence of explanation or contradiction. Even in that case, the court could not legally direct a conviction. It cannot do so in any criminal case. That is solely for the jury and it could have the right, after a survey of the whole case, to refuse to convict, unless satisfied beyond a reasonable doubt of the guilt of the accused, even though the statutory prima facie evidence were uncontradicted. The case of Commonwealth v. Williams, 6 Gray, 1, supports this view.

Without the aid of the statute, the presumption provided for therein might not arise from the facts proved, although the statute says there shall be sufficient to authorize such presumption. The legislature has the power to make these facts sufficient to authorize the presumption, State v. Mellor, 13 R. I., at 669, and the jury has the power, in the absence of all other evidence, to base its verdict thereon, if satisfied that the defendant is guilty. But the jury must, in all cases, be satisfied of guilt beyond a reasonable doubt, and the enactment in regard to the presumption merely permits, but cannot in effect direct, the jury to convict under any circumstances. The dissenting opinion of Mr. Justice Thomas, delivered in Commonwealth v. Williams, 6 Gray, supra, contains all that can be said against the validity of this kind of legislation.

It is argued, however, that assuming the validity of the provision in cases of excise sales and kindred cases, such as having in possession game out of season, Phelps v. Racey, 60 N. Y. 10,

and in civil cases, such as providing that the comptroller's deed upon a sale of land for taxes affords a presumption of the regu-. larity of all prior proceedings, Howard v. Moot, 64 N. Y. 262; Colman v. Shattuck, 62 id. 348, yet the principle does not apply to a case like this.    The reason alleged is that the fact which is. to be regarded a prima facie evidence of guilt, viz.: the posses-- sion of the bottles by a dealer in second-hand bottles without the; written consent of the owner, was not one sufficiently identified in ordinary circumstances with guilt to make it the foundation of such a presumption.

The case of People v. Lyon, 27 Hun, 180, was a prosecution under the same section of the statute as that in Com'rs of Excise v. Merchant, 103 N. Y.; 2 St. Rep., supra.    One of the judges at the general term, in illustration of his meaning that the fact from which the inference of guilt may be drawn should have some kind of natural inference to, or bearing upon the main fact, said that the legislature could provide for such a presumption, it could enact that the drinking of liquors a mile distant from such premises should be prima facie evidence of a sale on the premises with intent that the liquors should be drank there.. Or it might enact that if a dead body was found in any house, it should be prima facie evidence that the occupier of the house had murdered the deceased.    The learned judge thought the act in question was entirely arbitrary and had no regard to the connection or want of connection between the fact from which the presumption was to flow and the guilt of the accused.    Yet this particular enactment, thus condemned by the supreme court, was upheld by this court in Com'rs v. Merchant, 103 N. Y. 2 St. Rep. supra.    The cases cited by way of illustration by the learned judge in his opinion in the supreme court are, in our view, far below the mark and contain nothing in common with the enactment here under review.    In the cases supposed there would be, as the learned judge said, no kind of connection be- tween the fact proved and the main fact in controversy.    Such an enactment would be purely arbitrary.    In this case, how- ever, we think such connection exists.    Of course the fact from which the presumption is to be drawn may exist without the existence of the main fact.    That is true in all cases.    In other words, the two facts were not necessarily inseparable.    But in

this case the fact of the possession of three kinds of bottles by a dealer in second-hand articles without the written consent of the owner, while it may be innocent, yet the presumption of an unlawful use or traffic in them is not so forced or so extraordinary as to be regarded by sensible or unprejudiced men as unreasonable or unnatural. It is some evidence of the main fact, and the strength of it is properly a matter for legislative enactment in the first instance, subject to its submission to the jury for its deliberation and determination. So the presumption from the possession of certain birds out of season, that they were unlawfully killed or taken in the state, is not a certain presumption in any sense. A person might of course have the birds and have procured them in another state and, therefore, not be guilty of a violation of the game law. Yet a presumption of a violation of the statute is not such a forced and unnatural one that the legislature may not enact that it shall be made and thus leave the defendant to explain it. Commonwealth v. Williams, 6 Gray, supra, at p. 6 in opinion of Shaw, Ch. J.

Nor can it be successfully maintained that this species of legislation is to be confined to those cases where the explanation of the fact from which the presumption is to arise is peculiarly within the knowledge of the party who is accused. There are many cases in the books (and they are cited in the cases already alluded to) where the principle is held that the burden of proving the existence of a fact peculiarly within the knowledge of the accused is at common law placed upon him. Potter v. Deyo, 19 Wend. 361; People v. Nyce, 34 Hun, 298. If legislation were confined to such cases, it is plain that it would be entirely unnecessary and would accomplish nothing, as the law would place the burden of explanation upon the defendant without the aid of the statute. Within the limitations already alluded to and described, the statute may provide for the presumption and call upon the defendant to explain the fact. In prosecution for the sale of liquor without a license, the supreme court of Massachusetts held that under the old act the prosecution must prove by proper evidence that the accused had no license, and no presumption that he had none could arise from the fact of selling. Commonwealth v. Thurlow, 24 Pick. 374. Thereupon the legislature passed an act that in all prosecutions

for selling liquors the legal presumption should be that the defendant had not been licensed, thus reversing what had been held to be the common-law rule in Commonwealth v. Thurlow, supra.

This was held to be within the power of the legislature. Commonwealth v. Kelly, 10 Cush. 69, 70; Same v. Williams, supra. It is true the fact of having a license is one peculiarly within the knowledge of the party licensed. Yet the validity of legislation is recognized in these cases, although it enacts that a presumption shall be made from certain facts which at common law would not give rise to any such presumption. I do not know of any constitutional principle which, while permitting the legislature to enact that the legal presumption arising from the sale of liquor shall be that the person selling had no license, yet, at the same time, prevents the enactment of a provision like the one in the statute under discussion. If the legislature have the power in the first instance, I think it follows that it must have the power in the other. I can see no solid ground for distinction between the two cases. That it has the power in the first case is substantially conceded by all. The inference of guilt, under the provision in question here, is quite strong as in many other cases that arise under statutory enactments and we think it sufficiently reasonable and natural to warrant a legislature in passing such an act. The opinion of this court upon the question of the policy of this kind of legislation is not at all material, and will not, therefore, be stated.

The effect of the presumption is to call upon the accused for some explanation. If none be given, the jury may, as I have said, still refuse to convict; but if they convict, the verdict may be upheld as founded upon sufficient evidence. The provision fills all the requirements of an act of this nature, for it leaves an accused a fair opportunity to relieve himself from the presumption, to explain the circumstances under which the bottles came into his possession, and they were of such a nature as to show him innocent of an unlawful use, purchase or traffic therein.

A dealer in second-hand bottles intending to obey the law would fairly be open to no danger of unjust conviction. While not giving personal supervision to the receipt of bottles coming by railroad or vessel, or brought to him for sale, he may,

direct his agents to receive none of the kinds mentioned, and when they come from abroad he may so far conditionally receive them as to open their coverings and see what they are, and reject those which he cannot lawfully buy or deal in. Such a momentary or conditional possession, fairly explained and believed by the jury, or in regard to which they were doubtful, would rebut the statutory presumption and call for an acquittal. Proof that the bottles in question had been sold, or written authority to deal in them had been given by the owners to some one else, would also be a defense. It might be difficult of proof, it is said, and this may sometimes be true. If difficult of proof, the defendant should think of that before he purchases or deals in them, and decides to run the risk.

The Rhode Island supreme court has held an act unconstitutional which in substance provided that the notorious character of the premises, or the notoriously bad or intemperate character of the persons frequenting the same, or the keeping of implements or appurtenances usually appertaining to a grog shop where liquors are sold, should be prima facie evidence that the liquors were kept on the premises for the purpose of sale within the state. State v. Beswick, 13 R. I. 211; State v. Kartz, id. 528. The same court, and in the same volume of its reports, held that a statute providing that evidence of the sale or keeping of intoxicating liquors for sale in any building should be prima facie evidence that the sale or keeping was illegal, and that the premises were nuisances, was unconstitutional. State v. Higgins, 13 R. I. 330; State v. Mellor, id. 666.

In the Kartz case, supra, the court said that the introduction in the law of the principle that a person could be punished for what other people said about him was to render all constitutional provisions unavailing for his protection. The distinction is plain, I think, between the two classes of cases, and the statute under review here does not come within the principle which the Rhode Island court held to be a violation of constitutional rights.

We conclude that the provision in question cannot be assailed upon any constitutional ground.

The statute, however, is so framed that if the proprietors or

owners of these marked bottles have once sold them, no matter to whom, the bottles may thereafter be freely dealt in.

In the Bartholf case the evidence shows, as I think, a conditional sale of the bottles, at the option of the party who deposits the money as security for their return. It does not show an agreement to return the bottles. The evidence is that the drivers of the beer or soda water carts who take out the liquors for the owners or manufacturers take them in these bottles, and that they deliver the beer, soda or other liquor in the bottles to the customers. They (the drivers) then give a receipt to the customers for the deposit given by the customers to the drivers for the safe return of the bottles. This deposit is taken to the manufacturers and they credit the customer with its amount, keeping what is termed a separate deposit account, and when they return the bottles the manufacturers refund the money, and if the bottles are not returned the manufacturers keep the money. That a deposit was given as security for the safe return of the bottles does not prove that there was an agreement to return them. The evidence here shows, as it seems to us, the existence of an understanding that the party may return the bottles and get back his money, or keep the bottles and regard the deposit as a payment, just as he might elect. This construction is strengthened by proof of the fact that the manufacturer acted on the theory that if the bottles were not returned he was to keep the money. The case is barren of any evidence proving an obligation to return the bottles. The book-keeper said he did not know of any sales of bottles, but the above evidence is all there is on the subject of the delivery of bottles by the manufacturers, and whether it constitutes a sale thereof at the election of the persons receiving them, and upon the condition of the deposit operating as a payment for the bottles, is a question of law.

The taking of security for the return of the bottles from the party to whom they were delivered, so long as there is no evidence of an agreement and the party is under no legal obligation to return them, he having the right to retain them if he choose to leave the money deposited as a payment for the bottles, amounts in law to a sale of them at the election of the party to whom they are delivered. We think the evidence in this

case of Bartholf, at least, shows just such a state of facts.

The case of Westcott v. Thompson, 18 N. Y. 363, is unlike this. An express agreement to return the barrels was there proved, and the agreement to thereafter pay two dollars for such barrels as were not returned was intended by the parties, as the court held upon a review of all the facts, to mean that the manufacturers should have all the barrels after the sale was drawn, but they contemplated the possibility of the loss or destruction of some, and the consequent inability of the purchaser of the ale to return them, and they intended to fix by the agreement a price to be paid as the value of each barrel which should not, for the above reason, be re-delivered to the manufacturers.

Here no such agreement to return the bottles is proved, but on the contrary the evidence shows that the right to retain the bottles was with the party receiving them from the manufacturer of the beer or soda water, subject, however, in that case, to the payment of the deposit made for the purpose. This may not be the actual truth of the case. The evidence is quite loose and somewhat unsatisfactory on this branch. The receipts given by the driver are nowhere put in evidence, and whether they contain anything further in the way of an actual agreement to return the bottles cannot be known from this record.

Another trial may show the whole case more fully and accurately.

The Quinn case is not as specific in the offers and exceptions as the Bartholf case. Yet it is seen that even in the former case there was some attempt made to show the facts as to the deposit, and seemingly a ruling of the judge that it was immaterial, or that the court would take notice of such custom. We are not disposed to be technical in such a case, where the subject seems to have been presented to the mind of the court and definitely ruled on by it, and when we think that possible injustice might result from a refusal to notice a point which was in reality raised by counsel and actually passed upon by the trial court.

We think the judgment in the Cannon case must be affirmed, and in the other cases the judgments must be reversed and a new trial ordered.

All concur.