GEORGE CAFFEE v. STATE.

No. A-2184.   Opinion Filed May 14, 1915.

1. **EVIDENCE—Rules—Change by Legislature.** Existing rules of evidence may be changed at any time by the law-making power, when exercised within constitutional limitations.

2. **SAME—Limitations on Legislative Power.** Statutes which undertake to make evidence of certain facts absolute or conclusive proof of guilt are unconstitutional; those, however, which merely declare statutory presumptions affecting the burden of proof are valid.

3. **INTOXICATING LIQUOR—Possession—Prima Facie Evidence of Guilt.** A statute making the possession of more than a certain amount of intoxicating liquor prima facie evidence of an intent to violate provisions of the prohibitory law, is not unconstitutional as invading the province of the judiciary, and depriving the accused of the presumption of innocence, or as making prima facie evidence of guilt a fact which has no relation to, or does not tend to prove, the criminal act.

4.  **SAME—Question for Jury.**   Under a provision of the act of
    1913, chapter 26, declaring that the keeping in excess of a certain
    amount of intoxicating liquors shall be ''**prima facie** evidence of
    an intention to convey, sell, or otherwise dispose of such liquors,''
    evidence of such possession is sufficient to establish the unlaw-
    ful intent, unless rebutted, or the contrary proved, yet it does
    not make it obligatory upon the jury to convict after the pre-
    sentation of such proof, but such evidence is competent and siffi-
    cient to justify a jury in finding a defendant guilty, provided
    it does in effect satisfy them of his guilt beyond a reasonable
    doubt.

5.  **SAME—''Prime Facie Evidence''—Legal Weight of Expres-
    sion.**   The phrase ''prima facie evidence,'' as used in the statute,
    is such evidence as, in the judgment of the law, is sufficient to
    establish the fact, if it be credited by the jury, and unless re-
    butted or the contrary proved, it remains sufficient for that pur-
    pose.

    (Syllabus by the Court.)

*Appeal from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

George Caffee, convicted of a violation of the prohibitory
law, appeals.   Affirmed.

*Crump, Crump & Garrett,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty.
Gen., for the State.

DOYLE, P. J.   On information filed in the superior court
of Muskogee county, charging that on the 4th day of Novem-
ber, 1913, he did unlawfully have the possession of nine pints
of whisky and one quart of whisky with the intention of selling
the same, Geo. Caffee, the plaintiff in error, was convicted and
sentenced to be confined in the county jail for thirty days, and
to pay a fine of $50 and the costs.   The judgment and sentence
was entered December 13, 1913.   From the judgment an appeal
was taken by filing in this court on February 6, 1914, a petition
in error with case-made.

The evidence shows that E. A. Maloney, a deputy sheriff,
in serving a search warrant on the defendant's place of busi-
ness, known as the "Busy Drug Store," 110 North Second street,
Muskogee, found two pints of whisky in a little safe, and seven

pints concealed in a wall case behind rolls of paper in the drug store, and a quart bottle nearly full of whisky on the prescription case.

The state introduced a certified copy of the record of the Internal Revenue Collector's office, showing the payment of the special tax required of liquor dealers: "place, Busy Drug Store, by G. C. Caffee, 110 North Second street, Muskogee, payment made August 7, 1913."

The one witness introduced by the defendant, F. J. Kell, testified that he was a deputy collector of internal revenue for the district of Oklahoma; that he knows Geo. Caffee, and where his drug store is; that this drug store handles patent medicines and carries beef wine, Mareno, and patent medicines of that description, and upon such the government requires the payment of the special tax. That where patent medicines or anything else is sold that requires the payment of the special tax, the license issued to a drug store is the same kind of license as that issued to a retail liquor dealer.

The court, with other instructions, instructed as follows:

"You are instructed that, under the laws of the state of Oklahoma, the keeping in excess of one quart of any spirituous, vinous, fermented or malt liquors, or of any liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol measured by volume, and which is capable of being used as a beverage (except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States) is *prima facie* evidence of an intention to convey, sell, or otherwise dispose of such liquors. (Given and excepted to by defendant.) (Signed) Farrar L. McCain, Judge."

Error is assigned and exception taken to this instruction. Counsel for the plaintiff in error contend that the law upon which this instruction is based is unconstitutional, for the reasons stated in *Ex parte Wilson*, 6 Okla. Cr. 451, 119 Pac. 596. The doctrine of the Wilson case has no bearing upon the question involved here. The statute there considered (section 4, ch. 70, Sess. Laws 1911) made it a crime "for any person to

have or keep in excess of one quart of spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor." The instruction here given was based upon section 6, chapter 26, Sess. Laws 1913, providing:

"Section 6. The keeping in excess of one quart of any spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor, or any liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States, or in any manner permitting any other person to have or keep any such liquors in or about his place of business, or any place of amusement, or recreation, or any public resort, or any club room; provided, however, the foregoing provision of this section shall not apply to bonded apothecaries, druggist, or pharmacist, as to alcohol purchased by them pursuant to the rules and regulations promulgated by the Governor in accordance with the provisions of the laws of this state; or the keeping in excess of one gallon of spirituous, or one gallon of vinous, or more than one cask of malt liquors, or any imitation thereof, or substitute therefor; nor more than one cask of any liquor or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States, shall be *prima facie* evidence of an intention to convey, sell, or otherwise dispose of such liquors; provided, further, that this section shall not be construed in any way to legalize the keeping of such liquors for unlawful purposes."

The courts hold that existing rules of evidence may be changed at any time by the law-making power when exercised within constitutional limitations. The Legislature has frequently changed the rules of evidence and declared that certain facts when shown shall constitute *prima facie* evidence of guilt. With what intent a person keeps intoxicating liquors is always a question of fact for the jury, to be determined upon a considera-

tion of the evidence. In the determination of that question they are required by the statute to consider the keeping of a certain amount of intoxicating liquors as *prima facie* evidence of an unlawful intent. But that evidence may be rebutted by other evidence in the case, whether shown by evidence on the part of the defense, or by the state in connection with the evidence proving the possession. With such evidence, the jury must also take into consideration the presumption of the innocence of the accused until the contrary is proved beyond a reasonable doubt. It does not change the rule in all criminal cases that, "before a conviction can be had, the jury must be satisfied from the evidence beyond a reasonable doubt of the affirmative of the issue presented in the accusation that the defendant is guilty in the manner and form as charged in the indictment or information." 3 Rice on Ev., par. 259, and cases cited.

Says Wigmore:

"There remains a question which has no concern with the question of conclusive evidence, but has often been assimilated to it, and has received an undeserved importance and a needless confusion by that association, namely, the question of the constitutionality of statutes creating rules of presumption or *prima facie* evidence. A rule of presumption is simply a rule changing the burden of proof, *i. e:*, declaring that the main fact will be inferred or assumed from some other fact until evidence to the contrary is introduced. There is not the least doubt, on principle, that the Legislature has entire control over such rules, as it has over all other rules of procedure in general and evidence in particular, subject only to the limitations of evidence expressly enshrined in the Constitution. If the Legislature can abolish the rules of disqualification of witnesses and grant the rule of discovery from an opponent, it can shift the burden of producing evidence. Yet this elementary truth has been repeatedly questioned, and courts have repeatedly vouchsafed an unmerited attention to the question, chiefly through a hesitation in appreciating the true nature of a presumption and a tendency to associate in some indefinite manner the notion of conclusively shutting out all evidence and that of merely shifting the duty of producing it. Fortunately, sound principle has almost everywhere prevailed, though at an unnecessary expense of argument and hesitation." (Wigmore, Ev. par. 1354.)

A well considered case is *State v. Barrett,* 138 N. C. 630, 1 L. R. A. (N. S.) 626. The court in that case gave an instruction to the jury based upon a statute similar to the one involved here. The opinion of the court, written by Justice Connor, is clear and logical and shows great research. It is in part as follows:

"The defendant next calls into question the validity of the statute because he says the fact made *prima facie* evidence of the guilty intent has no relation to the criminal act, and does not tend to prove it; first, because the possession of liquor does not tend to show an intent to sell it; and, second, the possession of a quantity more than one quart is entirely consistent with such possession for personal or domestic use. It must be conceded that some of the courts have placed this limitation upon the legislative power. Peckham, J., in *People v. Cannon,* 139 N. Y. 32, 36 Am. St. Rep. 668, 34 N. E. 759, says: 'The limitations are that the fact upon which the presumption is to rest must have some fair relation to, or natural connection with, the main fact. The inference of the existence of the main fact, because of the existence of the fact actually proved, must not be merely and purely arbitrary, or wholly unreasonable, unnatural, or extraordinary; and the accused must have in each case fair opportunity to make his defense, and to submit the whole case to the jury, to be decided by it after it has weighed all the evidence, and given such weight to the presumption as to it shall seem proper.' *State v. Beswick,* 13 R. I. 211, 43 Am. Rep. 26. This case has been criticised in the following language: The opinion discloses confused notions as to the nature of presumptions and burden of proof. 'It has occasionally been suggested that these legislative rules of presumption or any legislative rules of evidence must be tested by the standard of rationality, and are invalid if they fall short of it. But this cannot be conceded. If the Legislature can make a rule of evidence at all, it cannot be controlled by a judicial standard of rationality, any more than its economic fallacies can be invalidated by the judicial conceptions of economic truth. Apart from the Constitution, the Legislature is not obligated to obey either the axioms of rational evidence or the axioms of economic science. All that the Legislature does in such an event is either to render admissible a fact which was before inadmissible, or to place the burden of producing evidence on the *opposite* party. When this has been done, the jury is free to decide; or, so far as it is not, this is because the party has voluntarily failed to adduce contrary evi-

dence. There is here nothing conclusive, nothing prohibitive. So long as the party may exercise his freedom to introduce evidence, and the jurors may exercise their freedom to weigh it rationally, no amount of irrational legislation can change the result.' (Wigmore, Ev. par. 1354.)

"We think that a full recognition of the limitations does not invalidate the statute under discussion. Certainly the Legislature has the power to prohibit the keeping of liquor with intent to sell. Black, Intoxicating Liquors, 387. It is equally clear that, without any statutory rule of evidence, the keeping is an essential fact to be proved, and necessarily relevant. The quantity, place, circumstances, etc., in and under which it is kept, are to be considered by the jury in passing upon the intent. Black, Intoxicating Liquors, 525. This for the manifest reason that they have a relation to the offense charged, towit, the keeping with intent to sell. Therefore, when the Legislature gives an additional intensity to the proof of the fact which is, without any statute, relevant as tending to prove the fact in issue, we are unable to see how it can be said that it exceeds its constitutional limitation in this respect. The defendant, however, contends that the quantity named, to wit, 'more than a quart,' has no relation to, and does not tend to prove, the offense. The power being conceded, it is difficult to conceive how the court could undertake to fix the limit in respect to the quantity prescribed, as the basis of the presumption. It will be observed that it is not the keeping of a quart, or any fixed quantity beyond a quart, which is made a *prima facie* case, but 'more than a quart.' Of course, the *prima facie* case would be stronger or weaker according to the quantity kept in excess of a quart. We would find it exceedingly difficult to prescribe any limit to the power of the Legislature in this respect. We must ever keep in mind the fundamental principle that courts must not call into question the validity of statutes because they may not think them wise or wholesome. To do so would be to introduce untold confusion and uncertainty into our jurisprudence. It has been so frequently and forcibly said that, within the sphere of its power, the Legislature is supreme, that it does not need the citation of authority or extended reasoning to sustain it. As enforcing this truth, we quote: 'Whether the Legislature acted wisely or not is a question with which we have nothing to do. The power being admitted, its abuse can not affect it; that must be for the legislative consideration. It is sufficient that the judiciary claim to sit in judgment upon the constitutional power of the Legislature to act in a given case.

It would be rank usurpation for us to inquire into the wisdom or propriety of their acts.' Nash, C. J., in *Taylor v. Newberne*, 55 N. C. (2 Jones, Eq.) 141, 64 Am. Dec. 566. 'It will not throw much light on a question like this to put extreme cases of abuse of such power to test the existence of the power itself.' Shaw, C. J., in *Norwich v. Hampshire County*, 13 Pick. 60. 'There is no shadow of reason for supposing that the mere abuse of power was meant to be corrected by the judiciary.' Black, C. J., in *Sharpless v. Philadelphia*, 21 Pa. 147, 59 Am. Dec. 759. See also Iredell, J., in *Calder v. Bull*, 3 Dall. 386, 1 L. Ed. 648. In *Cunningham's Case*, 25 Conn. 193, the act provided that the finding of spirituous liquor in possession of a person, except in his dwelling house, should constitute *prima facie* evidence that it was kept for sale. In *Willams' Case*, 6 Gray, 1, the statute provided that the delivery of liquor in any other place than a dwelling house should constitute *prima facie* evidence. In *Merchant's Case*, 103 N. Y. 143, 57 Am. Rep. 705, 8 N. E. 484, the act provided that, where the person is seen to drink intoxicating liquors on the premises of one who had license to sell liquor not to be drunk on the premises, it should constitute *prima facie* evidence of guilt. In *Cannon's Case*, 139 N. Y. 32, 36 Am. St. Rep. 668, 34 N. E. 759, the act made the possession of a junk seller of second handed bottles and kegs presumptive evidence of unlawful use. In *Santo's Case*, 2 Iowa, 165, 63 Am. Dec. 487, the statute made the keeping of liquor in any other place than the dwelling or its dependencies *prima facie* evidence of keeping liquor with intent to sell. These acts were all sustained. See, also, *Lincoln v. Smith*, 27 Vt. 328; *American Fur Co. v. United States*, 2 Pat. 358, 7 L. Ed. 450. Notwithstanding the decision in *Beswick's Case*, 13 R. I. 211, 43 Am. Rep. 26, we find the Supreme Court of Rhode Island at the same term, in *State v. Mellor*, 13 R. I. 666, holding that a statute providing that evidence of the sale or keeping of intoxicating liquors for sale shall be evidence that the sale or keeping is illegal, was valid, the court saying: 'This inference or presumption, without the aid of the statute, would not be available as legal evidence, but we think that it was in the power of the general assembly to make it so; and, when it once becomes evidence, it is for the jury, not the court, to say whether or not it is sufficient to prove the fact for the proof of which it is adduced.' We know of no rule based upon sufficiently general observation or experience which would enable this court to say, as a matter of law, that the keeping of more

than a quart of liquor in one's possession has no relation to an intent to sell."

See, also, Cooley's Const. Lim. pp. 409, 410; Wharton's Crim. Ev. 715 a., *State v. Sheppart*, 64 Kan. 451, 67 Pac. 870.

In *Com. v. Kimball*, 24 Pick. 366, it is said:

"Making out a *prima facie* case does not necessarily or usually change the burden of proof. A *prima facie* case is that amount of evidence which would be sufficient to counterbalance the general presumption of innocence, and warrant a conviction, if not encountered and controlled by evidence tending to contradict it, and render it improbable, or to prove other facts inconsistent with it. But the establishment of a *prima facie* case does not take away from a defendant the presumption of innocence, though it may, in the opinion of a jury, be such as to rebut and control it; but the presumption remains, in aid of any other proofs offered by the defendant to rebut the prosecutor's *prima facie* case."

"The use of the term '*prima facie*,' as applied to evidence, does not shift the burden of proof." (*Bowman v. State*, 38 Tex. Cr. 14, 41 S. W. 835.)

The phrase '*prima facie* evidence,' as used in the statute, is such evidence as in the judgment of the law is sufficient to establish the unlawful intent, and, if it be credited by the jury, it is sufficient for that purpose, unless rebutted, or the contrary proved. Under this construction of the statute there can be no question with respect to its constitutionality.

Finding no error in the record, the judgment is affirmed.

FURMAN and ARMSTRONG, JJ., concur.