## DAVENPORT v. STATE.

No. A-11482. March 12, 1952.

(242 P. 2d 466.)

Shilling & Shilling, Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. P. Garrett, Asst. Atty. Gen., for defendant in error.

JONES, J.   The defendant, H. C. "Jelly" Davenport, was convicted in the county court of Carter county of the unlawful possession of intoxicating liquor and was sentenced to serve thirty days in the county jail and pay a fine of $50.

The following specification of errors is presented: (1) The search was illegal and the court should have suppressed the evidence. (2) The evidence was insufficient to go to the jury. (3) The court erred in its instructions.

In connection with the first assignment of error, the record discloses that prior to the commencement of the trial counsel for defendant moved the court to suppress the evidence for the reason that whatever evidence was obtained was by reason of an invalid search warrant and in violation of the constitutional rights of the defendant.   In support of his motion the affidavit for search warrant and the search warrant were offered in evidence.   No other evidence was presented by either the state or defendant and the court thereupon overruled the motion.   It is the contention of the defendant that the description of the premises to be searched set forth in the affidavit and in the warrant was so indefinite and uncertain that the searching officer could not locate the premises to be searched without obtaining information elsewhere than that set forth in the warrant.

The description of the premises to be searched as contained in the search warrant is as follows:

"A certain one story wood frame structure painted white and found on the east side of Hwy. 77 approximately 5½ miles south of Ardmore, Oklahoma used as such and also as a storage for liquors; also barns, caves, garages and all out buildings located on ―――― of Section 30, Township 5 South, Range 2 East ―――― of the I. M. ―――― County, Oklahoma, Carter County, Oklahoma; * * *"

It is established law that the burden of proof is upon the movant to introduce evidence to show the invalidity of the search.   No testimony was offered by the defendant herein to show that the place searched by the officers was at a different place than that set forth in the description mentioned in the warrant, neither did they offer proof to show that there was more than one house in the section named in the warrant.   If the accused had shown that there were more than one set of buildings in the section described in the warrant, which dwelling houses or buildings were owned and in possession of persons other than defendant, then under the rulings of this court the motion to suppress evidence should have been sustained for the reason it was what has been termed a blanket warrant.

This case is comparable in many aspects to the recent decision of King v. State, 92 Okla. Cr. 267, 222 P. 2d 771, wherein it was held that the accused had

failed to introduce evidence to show the invalidity of the search. In that case the defendant contended that the description of the quarter section of land named in the warrant contained two or more dwelling houses, but this court held that the evidence of the defendant in that regard was so ambiguous, conflicting and uncertain that it was impossible for the trial court to determine that there were actually two sets of dwelling houses on the quarter section of land described in the warrant.

In the instant case no contention is made that there were two or more dwelling houses on the section of land named in the warrant, but the defendant rested his case entirely upon the warrant itself. The defendant was named in the search warrant and we think there is a sufficient description of the premises so as to enable the officer executing the warrant to locate the premises without the aid of any other information save that contained in the warrant. However, as was said in the case of McCarthy v. State, 91 Okla. Cr. 294, 218 P. 2d 397, 398:

"An officer serving a search warrant may refer to maps, plats, etc., to obtain general information as to the general location of a piece of property, the particular location of which is specifically described in the warrant; and, he may rely on his own personal knowledge; and, he may call upon his knowledge and understanding in interpreting abbreviations in a specific description and resort to such aids will not render the search invalid where the property searched was that described in the warrant, and the property could actually be located from the description contained in the search warrant."

The second assignment of error pertaining to the alleged insufficiency of the evidence is directed at that portion of evidence pertaining to the liquor which was found. Counsel contend that there was no evidence to show that the liquor was intoxicating.

The state called three witnesses, but the officer to whom the warrant was directed and who conducted the premises search was Jess Lea. He testified positively that he found something like 40 pints of whiskey, and upon interrogation produced a list purportedly setting forth the exact description of what he found, which included wine, gin, 17 pints of whiskey, two 4/5 quarts of whiskey, and 18 pints of whiskey.

Both counsel for the state and defendant cite and rely upon the case of Hughes v. State, 85 Okla. Cr. 25, 184 P. 2d 625, 628, to support their respective contentions. We think that decision supports the contention of the state that where a witness testified positively to seizing whiskey from an accused that it is unnecessary to prove its alcoholic content as the court will take judicial knowledge that whiskey is intoxicating. The theory of the defendant is that since the liquor itself was not introduced in evidence and the proof does not show that any of the three witnesses tasted the liquor that there was no actual proof that it was whiskey. However, the witnesses each testified that whiskey was seized, and there was no contention made that the liquor seized by the officers in the raid was not intoxicating liquor. In Hughes v. State, supra, this court stated:

"We are of the opinion that under the decisions of this court, this evidence was sufficient to prove the liquor was intoxicating. We have often held that the court will take judicial knowledge that whiskey is intoxicating liquor. The evidence here shows that the whiskey was 'tax-paid.' Defendant did not request or offer to open the bottles, or to examine their contents. No evidence was offered by defendant. Patton v. State, 20 Okla. Cr. 52, 200 P. 878; Crouse v. State, 39 Okla. Cr. 127, 263 P. 681; Crouse v. State, 69 Okla. Cr. 24, 100 P. 2d 467; Johnson v. United States, 6 Cir., 46 F. 2d 7."

The witness Lea in testifying in response to question as to what was found in the search of defendant's premises stated:

"A. Seven 4/5 quarts of wine, 17 pints of whiskey, one 4/5 quart of gin, 13 half pints of gin, six pints of gin, two 4/5 quarts of whiskey and eighteen half pints of whiskey.

"Q. All right, what did you do with this whiskey? A. Well, Mr. Johnson, the Deputy Sheriff was with me, he helped load the whiskey in the car and brought it in here, we stopped in front of this building and carried it in and carried it upstairs and turned it over to Mr. Johnson, counted the whiskey."

There was no further examination of the witness in which he was asked to give a further description of the intoxicating liquor which was seized, and counsel for defendant did not cross-examine him to determine how the witness came to the conclusion that certain of the bottles contained wine, or gin, or whiskey. It may have been that a further examination of the witness would have disclosed that his conclusion that a part of the liquid which was seized was whiskey was based upon his personal observation of the bottle, the label contained thereon, the way in which it was packed, and whether it had a government seal or stamp over the cork, or he might actually have tasted it. However since no further examination was made of the witness on this point, we do find that we have his positive assertion that he seized a large quantity of whiskey. The weight to be given to the testimony of the witnesses is solely for the jury to determine.

The third assignment of error is directed at the giving of instruction No. 6, in which the jury was instructed that the keeping in excess of one quart of intoxicating liquor was prima facie evidence of an intent to sell, convey, or otherwise dispose of such liquor. Counsel concede that the instruction which was used has been approved in Caffee v. State, 11 Okla. Cr. 485, 148 P. 680; Brickey v. State, 55 Okla. Cr. 451, 32 P. 2d 743; Farrow v. State, 64 Okla. Cr. 460, 82 P. 2d 244; Stites v. State, 44 Okla. Cr. 92, 279 P. 911.

In the case of Savalier v. State, 85 Okla. Cr. 87, 185 P. 2d 476, this court suggested a form of instruction which should be given along with the prima facie evidence instruction as follows:

"In prosecution for unlawful possession of intoxicating liquor and trial court has given instruction based on statute relative to prima facie evidence of defendant's guilt by reason of possession in excess of one quart of intoxicating liquor (Tit. 37 O. S. 1941 § 82), a further instruction in substantially the following language should be given: 'The term "prima facie evidence" as that term is used in the statute above mentioned is that degree of proof which unexplained or uncontradicted is sufficient, if it be credited by the jury, to establish the unlawful intent, yet it does not make it obligatory upon the jury to convict after the presentation of such proof; whether or not such evidence is sufficient to overcome the presumption of innocence of defendant and to establish his guilt beyond a reasonable doubt, when all the evidence is considered, is for the determination of the jury, and the term prima facie evidence as applied to the evidence does not shift the burden of proof from the state to the defendant.' "

However, the fact that we have suggested what we think is an improvement upon the old form of instruction given in the cases hereinabove mentioned, does not mean that we considered the old instruction as inherently bad. On the contrary, we do not think that it was misleading or confusing to the jury, and in view of the fact that this court had approved the giving of such instructions in numerous cases, and in further view of the fact that there was no defense at all offered in this case in which the defendant was only given the minimum punishment provided by law, it certainly would not constitute reversible error.

The judgment and sentence of the county court of Carter county is affirmed.

BRETT, P. J., and POWELL, J., concur.