# STATE v. J. A. KELLY.[1]

August 4, 1944.

No. 33,725.

*Moonan & Moonan,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, and *William P. Sturtz,* County Attorney, for the State.

[1]Reported in 15 N. W. (2d) 554.

STREISSGUTH, JUSTICE.

On September 11, 1943, the sheriff of Freeborn county, in which prohibition is in force, on his own verified complaint charging that defendant, at his dwelling house in the city of Albert Lea, had intoxicating liquors in his possession for the purpose of selling or otherwise disposing of the same, procured a search warrant commanding a search of such dwelling house for intoxicating liquors. Armed with the warrant, the sheriff on Sunday, September 12, at about noon, appeared at defendant's home and exhibited the warrant. Asked if he had any liquor, defendant stated that he had a case and led the sheriff to the garage attached to his dwelling and there pointed out a case of Scotch whiskey. Also found in the garage was an empty carton marked with the trademark "Wilken Reserve Blended Whiskey." A thorough search was then made of both house and garage, but without further discovery of either liquor or incriminating evidence thereof. Defendant's automobile, at anchor nearby, was next searched. The glove compartment in the car was locked, but, upon request, defendant furnished the sheriff with the key. Inside the compartment were found three half-pint bottles of gin. No other liquor was found. The defendant told the sheriff that he, the defendant, had purchased the liquor for his own consumption.

On September 20, 1943, a criminal complaint, under Minn. St. 1941, § 340.36 (Mason St. 1940 Supp. § 3200-51), charging defendant with the possession of intoxicating liquors for sale in a prohibition county, was filed in justice court. The justice, instead of trying defendant on the charge, conducted a preliminary hearing and bound him over to the district court for trial. At the trial the details and results of the search, as we have related them, were shown. The sheriff admitted that he "had no evidence that he [defendant] had made a sale."

The principal question presented is whether the proof was sufficient to justify a conviction. The trial court, in denying defendant's motion to set aside the verdict, considered itself bound by Minn. St. 1941, § 340.66 (Mason St. 1940 Supp. § 3200-82), but

stated, "it is a drastic proposition and a close question." That section provides:

"The finding of any such intoxicating liquors in the possession of any person, by means of search warrant, shall be prima facie evidence that such person had possession of such liquors for the purpose of selling, * * * the same without first having obtained license therefor * * *."

Squarely presented, therefore, is the question of the validity of the quoted statute as applied to a fact situation such as is disclosed by the record. That question does not involve the guilt or innocence of the defendant. It concerns only his constitutional rights. The law of the land is the only yardstick which can be allowed to gauge the liberties of citizens, whatever may be their just or ill desert.

Statutes creating artificial presumptions of fact and prima facie proof are by no means new or even modern.[2] They have long been recognized and enforced by this court. State ex rel. Robertson v. New England F. & C. Co. 126 Minn. 78, 147 N. W. 951, 52 L.R.A.(N.S.) 932, Ann. Cas. 1915D, 549; Thorpe v. Pennock Merc. Co. 99 Minn. 22, 108 N. W. 940, 9 Ann. Cas. 229. Their function in criminal cases has been said to be "to make it possible to convict where proof of guilt is lacking." Pollock v. Williams, 322 U. S. 4, 15, 64 S. Ct. 792, 798, 88 L. ed. ——. In fact, of recent years there has been such a marked increase in the creation of this statutory device for use in criminal prosecutions as to suggest not only a design to minimize the labor of investigators and prosecutors, but a legislative trend—supported by judicial adherence to the dictum that there are no vested rights in rules of evidence[3]—to consider the fundamental rights of the individual as secondary to the demands

[2]Thayer, Preliminary Treatise on Evidence (1898) p. 327, cites illustrations dating back to the reign of King Ine of Wessex (A. D. 688-755); he also refers (p. 180) to the Statute of Stabbing, enacted in 1603, fixing upon certain acts the quality of malice aforethought.

[3]2 Cooley, Constitutional Limitations (8 ed.) p. 766; 4 Wigmore, Evidence (3 ed.) § 1356.

of society.  See, O'Toole, "Artificial Presumptions in the Criminal Law," 11 St. John's L. Rev. 167; Brosman, "The Statutory Presumption," 5 Tulane L. Rev. 178; Chamberlain, "Presumptions as First Aid to the District Attorney," 14 A. B. A. Jour. 287.

Such statutes are of two general types: Those creating conclusive presumptions of law or fact, and those creating rebuttable presumptions of fact or *"prima facie"* proof.  Those of the first type have met the almost uniform fate of being declared unconstitutional, as denying due process of law.  (See, 20 Am. Jur., Evidence, § 10; Juster Bros. Inc. v. Christgau, 214 Minn. 108, 7 N. W. [2d] 501.)  Those of the second type have met a varying fate, some withstanding and others succumbing to attacks on diverse grounds, *viz.*, that the statute violated the due process clauses of state and federal constitutions; denied equal protection of the laws; impaired the right of trial by jury; deprived the accused of the presumption of innocence; compelled him to give testimony against himself; or encroached upon the powers of the judiciary.  It would be a redundant task for this court to undertake a complete review and analysis of the many decisions passing upon the validity of such statutes, in view of the many exhaustive opinions, commentaries, and annotations which can be consulted for that purpose.[4]  How-

---

[4]In addition to commentaries referred to above, see State v. Thomas, 144 Ala. 77, 40 So. 271, 6 Ann. Cas. 744, 2 L. R. A. (N. S.) 1011, 113 A. S. R. 17; Griffin v. State, 142 Ga. 636, 83 S. E. 540, L. R. A. 1915C, 716, Ann. Cas. 1916C, 80; State v. Grimmett, 33 Idaho 203, 193 P. 380; Meadowcroft v. People, 163 Ill. 56, 45 N. E. 991, 35 L. R. A. 176, 54 A. S. R. 447; Commonwealth v. Williams, 6 Gray (Mass.) 1; State v. Barrett, 138 N. C. 630, 50 S. E. 506, 1 L. R. A. (N. S.) 626; State v. Lapointe, 81 N. H. 227, 123 A. 692, 31 A. L. R. 1212, and note; Board of Commrs. v. Merchant, 103 N. Y. 143, 8 N. E. 484, 57 Am. R. 705; People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 A. S. R. 668, and note; Hammond v. State, 78 Ohio St. 15, 84 N. E. 416, 15 L. R. A. (N. S.) 906, 125 A. S. R. 684, and note, 14 Ann. Cas. 732; State v. Beswick, 13 R. I. 211, 43 Am. R. 26; Chamberlain, "Legislative Correction in Criminal Procedure," 13 A. B. A. Jour. 703; "Statutory Presumptions as Devices to Facilitate the Proof of Crimes," 28 Col. L. Rev. 489; Keeton, "Statutory Presumptions—Their Constitutionality and Legal Effect," 10 Tex. L. Rev. 34; 20 Am. Jur., Evidence, §§ 9, 10, 11;

ever, since the precise question here involved has not previously been presented to this court, we shall refer to many of the authorities in the course of our opinion.

The definite judicial trend has unquestionably been to allow the legislature a comparatively free hand in declaring that proof of certain facts shall constitute prima facie evidence of the commission of a crime, or of a criminal intent, or of some act constituting an essential ingredient of a crime. Courts generally agree, however, that the legislative power is not unlimited, and, in testing the validity of statutes creating prima facie proof, both federal and state courts have of recent years quite uniformly applied the rule comprehensively stated in Mobile, J. & K. C. R. Co. v. Turnipseed, 219 U. S. 35, 43, 31 S. Ct. 136, 138, 55 L. ed. 78, 80, 32 L.R.A. (N.S.) 226, 229, Ann. Cas. 1912A, 463, 464, 2 N. C. C. A. 243, 248 (a civil case), as follows:

"That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed.

"If a legislative provision not unreasonable in itself prescribing a rule of evidence, in either criminal or civil cases, does not shut out from the party affected a reasonable opportunity to submit to the jury in his defense all of the facts bearing upon the issue, there is no ground for holding that due process of law has been denied him."

---

4 Wigmore, Evidence (3 ed.) § 1356; Jones, Evidence in Civil Cases, §§ 11a, 12; 2 Jones, Comm. on Evid. (2 ed.) § 573; Annotations: 13 Minn. L. Rev. 727; 31 A. L. R. 1222.

Since the Turnipseed case was decided in 1910, the test therein laid down has been applied by the United States Supreme Court, with varying results, in criminal as well as in civil cases involving the validity of presumptions and prima facie cases created by state as well as by federal statutes.[5] The latest pronouncement by that court is Tot v. United States, 319 U. S. 463, 63 S. Ct. 1241, 87 L. ed. 1519. There, the court had under consideration the validity of § 2(f) of the federal firearms act (15 USCA, § 902[f], 52 Stat. 1250, 1251), which provides:

"It shall be unlawful for any person who has been convicted of a crime of violence or is a fugitive from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported or received, as the case may be, by such person in violation of this Act."

In a prosecution under the act, instituted in New Jersey, the government's evidence was limited to proof that in 1925 Tot had been convicted in another state of assault and battery, that in 1932 he pleaded *non vult* to a charge of burglary, and that in 1938 he was found in possession of a loaded automatic pistol. After denial of a motion for a directed verdict, Tot took the stand and testified that he purchased the pistol in 1933 or 1934. He admitted the criminal record charged in the indictment and other convictions. In rebuttal, the government produced testimony that the pistol had been

[5]Bailey v. Alabama, 219 U. S. 219, 31 S. Ct. 145, 55 L. ed. 191; Lindsley v. Natural Carbonic Gas Co. 220 U. S. 61, 31 S. Ct. 337, 55 L. ed. 369, Ann. Cas. 1912C, 160; Reitler v. Harris, 223 U. S. 437, 32 S. Ct. 248, 56 L. ed. 497; Luria v. United States, 231 U. S. 9, 34 S. Ct. 10, 58 L. ed. 101; McFarland v. American Sugar Ref. Co. 241 U. S. 79, 36 S. Ct. 498, 60 L. ed. 899; Yee Hem v. United States, 268 U. S. 178, 45 S. Ct. 470, 69 L. ed. 904; Casey v. United States, 276 U. S. 413, 48 S. Ct. 373, 72 L. ed. 632; Manley v. Georgia, 279 U. S. 1, 49 S. Ct. 215, 73 L. ed. 575; Western & Atlantic Railroad v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. ed. 884; Morrison v. California, 291 U. S. 82, 54 S. Ct. 281, 78 L. ed. 664; Taylor v. Georgia, 315 U. S. 25, 62 S. Ct. 415, 86 L. ed. 615.

manufactured in 1919 and shipped by the maker to Chicago, Illinois.

In United States v. Delia, disposed of by the same decision, the court considered the validity of Delia's conviction in Michigan under the same act. The government's case against Delia consisted in proof that he had been previously convicted of robbery, was in possession of a loaded revolver manufactured in Massachusetts prior to 1920, and that some of the cartridges in the revolver had been manufactured in Ohio and some in Germany. Delia testified that he had, at about the time of his arrest, picked up the revolver when it was dropped by a person who attacked him, but there was testimony which tended to contradict this defense.

The question up for decision in both cases was the power of congress to create the presumption that (319 U. S. 466, 63 S. Ct. 1244, 87 L. ed. 1523) "from the prisoner's prior conviction of a crime of violence and his present possession of a firearm or ammunition, it shall be presumed (1) that the article was received by him in interstate or foreign commerce, and (2) that such receipt occurred subsequent to July 30, 1938, the effective date of the statute."

To show the full import of the decision in sustaining the contention that the statute failed to meet the tests of due process, we quote from it at length (319 U. S. 467-468, 63 S. Ct. 1245, 87 L. ed. 1524) :

"* * * the due process clauses of the Fifth and Fourteenth Amendments set limits upon the power of Congress or that of a state legislature to make the proof of one fact or group of facts evidence of the existence of the ultimate fact on which guilt is predicated. * * *

"The Government seems to argue that there are two alternative tests of the validity of a presumption created by statute. The first is that there be a rational connection between the facts proved and the fact presumed; the second that of comparative convenience of producing evidence of the ultimate fact. We are of opinion that these are not independent tests but that the first is controlling and the second but a corollary. Under our decisions, *a statutory presumption cannot be sustained if there be no rational connection*

*between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience.*[6]  This is not to say that a valid presumption may not be created upon a view of relation broader than that a jury might take in a specific case.  But *where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts."*   (Italics supplied.)

The government argued that the fact that the laws of most states forbid the acquisition of firearms without a record of the transaction or require registration of ownership tended strongly to indicate that acquisition must have been an interstate transaction, to which the court replied (319 U. S. 468, 63 S. Ct. 1245, 87 L. ed. 1525) :

"* * * we think the conclusion does not rationally follow. Aside from the fact that a number of states have no such laws, there is no presumption that a firearm must have been lawfully acquired or that it was not transferred interstate prior to the adoption of state regulation.  Even less basis exists for the inference from mere possession that acquisition occurred subsequent to the effective date of the statute,—July 30, 1938.  And, as no state

---

[6]"This seems to mean (1) that a statutory presumption is invalid if applied in either a civil or a criminal proceeding unless there is a logical connection between the proved facts and the presumed fact, and (2) that a statutory presumption with the requisite logical basis is invalid if it operates in a criminal case to fix upon the defendant the burden of producing evidence of the nonexistence of the presumed fact, unless its application will serve to avoid procedural inconvenience without unfairness or hardship to the defendant.  If this opinion is to be taken at face value, it destroys the distinction between the Turnipseed and Henderson cases set forth by Mr. Justice Butler [Western & Atlantic Railroad v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. ed. 884], disapproves a doctrine recognized by Mr. Justice Holmes [Casey v. United States, 276 U. S. 413, 48 S. Ct. 373, 72 L. ed. 632] and Mr. Justice Cardozo [Morrison v. California, 291 U. S. 82, 54 S. Ct. 281, 78 L. ed. 664], and overrules numerous prior decisions."  Professor Morgan, 56 Harv. L. Rev. 1324.

laws or regulations are cited with respect to the acquisition of ammunition, there seems no reasonable ground for a presumption that its purchase or procurement was in interstate rather than in intrastate commerce. It is not too much to say that the presumptions created by the law are violent, and inconsistent with any argument drawn from experience."

The argument that the defendants had the better means of information was also met and disposed of.

Pending before it at the time the Tot and Delia cases were decided was another case, also involving the federal firearms act, in which the Supreme Court denied *certiorari:* Cases (Velazquez) v. United States (1 Cir.) 131 F. (2d) 916, *certiorari* denied, 319 U. S. 770, 63 S. Ct. 1431, 87 L. ed. 1718. Jose Cases Velazquez was convicted in the district court of Puerto Rico. The government rested its case, as it did in the Tot case, upon proof of defendant's possession and use of a revolver, his previous conviction of a crime of violence, and the statutory prima facie proof of intent. Upon the authority of the Turnipseed, the Casey; and the Morrison cases, the circuit court of appeals had affirmed the conviction, stating (131 F. [2d] 924):

"In view of the fact, of which we may take judicial notice, that firearms and ammunition, if manufactured at all in Puerto Rico are manufactured there in only very small quantities, and in view of the relative ease with which the appellant could and the government could not show that he had received the revolver and ammunition since the passage of the Act, it seems to us clear that the statutory presumption does not violate constitutional principles," citing United States v. Tot (3 Cir.) 131 F. (2d) 261, which was subsequently reversed.

The denial of the writ of *certiorari* by the Supreme Court imports no expression of opinion by it upon the merits of the decision of the circuit court of appeals. United States v. Carver, 260 U. S. 482, 490, 43 S. Ct. 181, 182, 67 L. ed. 361, 364; Atlantic Coast Line R. Co. v. Powe, 283 U. S. 401, 51 S. Ct. 498, 75 L. ed. 1142.

Hence we cannot make any deduction from the fact that opposite results were reached in the Tot and Cases (Velazquez) cases, nor conclude therefrom that the federal firearms act may be invalid as applied to one set of facts and valid as applied to another. It is obvious, however, from the opinion in the Cases (Velazquez) case from which we have quoted, that the circuit court of appeals, in testing the validity of the act, applied the pragmatic test—based on comparative convenience and social necessity—which the Supreme Court declared was merely a "corollary" to the "controlling" *a posteriori* test—based on experience, observation, and "rational connection." (319 U. S. 467, 63 S. Ct. 1245, 87 L. ed. 1524.)

The pragmatic test focuses on the end in view rather than on the means applied. The rights of the individual are sacrificed because it is thought that the welfare of society demands it. In the many cases which have sustained statutory presumptions in connection with prosecution for violation of liquor laws, it is evident that the decisions are based upon the wholesome desire to enforce the liquor laws rather than on reason and experience. In their labored effort to sustain these statutes under any and all circumstances as a proper exercise of legislative control over evidence, many state courts have abjured all adherence to the Bill of Rights, as if it were a mere scrap of paper. However, their doctrine, "if carried to its logical conclusion is charged with insurmountable danger to personal liberty." 11 St. John's L. Rev. pp. 167, 172. Unless we are willing entirely to ignore the constitutional rights of a defendant accused of crime, the pragmatic test must be discarded in favor of the *a posteriori* test, founded on reason and experience. This test, so well illustrated in the Tot and Delia cases, may be posed thus: "Does our experience demonstrate that the fact presumed is usually and probably co-existent with the fact from which the presumption flows?" 11 St. John's L. Rev. p. 172.

In a searching analysis of the Tot case, Professor Morgan concedes that there is "ample justification" for the Supreme Court's holding, pointing out that "whether one fact forms a basis for a rational inference of another depends upon the relationship between

them in human experience." He further says (56 Harv. L. Rev. 1325):

"No doubt the court may be convinced that the legislature in a given case is not purporting to exercise a judgment as to the relationship in experience between two facts, but is using a formula expressing such a relationship in order to accomplish quite another purpose. If so, then it may well ignore the expression and insist that, however desirable the purpose, it must not be accomplished by illegitimate means. That it would be a great benefit to society if agencies of the Federal Government had both the privilege and the duty to prevent convicts and fugitives from justice from possessing firearms and ammunition wherever and whenever acquired cannot justify Congress in requiring or permitting triers of fact to find all arms and ammunition so possessed to have been the subject of recent interstate shipment."

In testing the validity of statutes creating prima facie proof for use in criminal cases, we must keep in mind not only the guarantees of due process and trial by jury and the constitutional protection against being compelled to testify—which are expressly enumerated—but also such fundamental rights as the presumption of innocence and proof beyond a reasonable doubt, which, though not expressly enumerated therein, are as much a part of the constitution as though expressly set out. Thiede v. Town of Scandia Valley, 217 Minn. 218, 14 N. W. (2d) 400.

As said by Mr. Justice Black, in his concurring opinion in the Tot case (319 U. S. 473, 63 S. Ct. 1247, 87 L. ed. 1527):

"* * * The procedural safeguards found in the Constitution and in the Bill of Rights, Chambers v. Florida, 309 U. S. 227, 237 [60 S. Ct. 472, 477, 84 L. ed. 716, 722], stand as a constitutional barrier against thus obtaining a conviction, ibid., 235-238. These constitutional provisions contemplate that a jury must determine guilt or innocence in a public trial in which the defendant is confronted with the witnesses against him and in which he enjoys the assistance of counsel; and where guilt is in issue, a verdict against

a defendant must be preceded by the introduction of some evidence which tends to prove the elements of the crime charged. Compliance with these constitutional provisions, which of course constitute the supreme law of the land, is essential to due process of law, and a conviction obtained without their observance cannot be sustained."

"* * * There is beyond controversy a reason for imposing limitations in criminal prosecutions which has no existence in civil cases. One accused of a criminal act is presumed to be innocent, in the absence of any evidence of his guilt, and we apprehend that this presumption is one protected by the fundamental law of each state from legislative destruction. If so, the courts must not permit it to be indirectly destroyed by declaring certain facts to be *prima facie* evidence of guilt, when those facts are neither criminal in themselves nor indicative of the existence of any criminal act or intent." Note, 36 A. S. R. 668, 686.

It has well been stated that "presumptions of law—at the best uncertain instruments in the investigation and discovery of truth—are especially dangerous in the administration of criminal justice when used to control or impair the natural fundamental presumption of innocence, their effect being, to give to evidence a technical probative force beyond that which it would naturally and ordinarily possess in producing conviction in the minds of the jury." Hammond v. State, 78 Ohio St. 15, 20, 84 N. E. 416, 417, 15 L.R.A.(N.S.) 906, 125 A. S. R. 684, 14 Ann. Cas. 732, 733. See, also, 12 Am. Jur., Constitutional Law, § 629.

And in the leading case of State v. Beswick, 13 R. I. 211, 219, 43 Am. R. 26, it is pointed out:

"* * * to hold that a legislature can create artificial presumptions of guilt from facts which are not only consistent with innocence, but which are not even a constituent part of the crime when committed, is to hold that it has the power to take away from a judicial trial, or at least substantially reduce in it, the very element which makes it judicial. To hold so is to hold that the legislature

has power to bind and circumscribe the judgments of courts and juries in matters of fact, and in an important measure to predetermine their decisions and verdicts for them."

The offenses created by our liquor laws are clearly defined in those laws. The naked possession of intoxicating liquor, irrespective of the time, the place, or the quantity involved, is not included among the offenses so defined. "Possession" is penalized only when it is "for the purpose of selling," etc. No distinction is made in this regard between wet and dry counties; mere possession is as legal in one type of county as in the other. No claim is, nor reasonably can be, made that § 340.66 prescribes more than a rule of evidence; no claim that the section is substantive law creating a distinct offense: "possession without explanation." The narrow question before us, therefore, is whether, under its power to prescribe rules of evidence, the legislature can constitutionally make possession of intoxicating liquor *"prima facie* proof" of the crime of possession for sale, as defined by other sections of the same law.

In the absence of statute, mere possession of intoxicating liquors unaccompanied by facts directly or inferentially pointing to an intended sale, does not establish the crime of possession for sale. State v. Scheid, 185 Minn. 496, 241 N. W. 572, and cases cited; State v. Keefe, 180 Minn. 124, 230 N. W. 257 (involving possession of three gallons of alcohol). Every Minnesota citizen, regardless of the county in which he lives, has a right to possess intoxicating liquors. They are not contraband. He has a right to keep them; a right to consume them; a right to give them away. Possession in the eyes of the law is a perfectly innocent act. It is only the sale, or possession with intent to sell, that the law forbids and punishes. What the United States Supreme Court said in reference to possession of agricultural land by an alien is equally applicable to the possession of liquor: "Possession * * * is an act that carries with it not even a hint of criminality. To prove such possession without more is to take hardly a step forward in support of an indictment." Morrison v. California, 291 U. S. 82, 90, 54 S. Ct. 281, 285, 78 L. ed. 664, 670. Yet the statute here involved makes pos-

session—an act wholly innocent in itself—prima facie evidence which, if undisputed and unexplained, is competent and sufficient evidence of the commission of a crime. As said by Mr. Justice Thomas in his oft-quoted dissent in Commonwealth v. Williams, 6 Gray (Mass.) 1, 9, construing a statute making the delivery of spirituous liquors prima facie evidence of a sale:

"* * * Upon the proof of a fact, equally consistent with the innocence, as with the guilt of the accused, it infers and presumes his guilt. Upon the proof of an act which the law nowhere forbids or censures, and which is, in and of itself, without meaning, it takes from the accused the presumption of innocence, and calls upon him for his defence; his defence, not to the thing proved, but to the thing not proved, the thing the government has failed to prove, to wit, a sale."

To which should be added the words of another dissenter, Mr. Justice Brown:

"* * * the Legislature cannot by its arbitrary will give to a perfectly lawful and innocent act an unlawful and criminal effect, or draw from acts warranted by law, and which everyone may rightfully do, an unlawful, improper and criminal intent." State v. Barrett, 138 N. C. 630, 648, 50 S. E. 506, 512, 1 L. R. A. (N. S.) 626, 634. See, also, Wynehamer v. People, 13 N. Y. 378, 444; State v. Beswick, 13 R. I. 211, 43 Am. R. 26.

State v. Shank, 74 Iowa 649, 652, 38 N. W. 523, 525, expresses the same thought in reverse, thus:

"* * * The defendant being authorized to keep intoxicating liquors for lawful purposes * * *, no presumption arises against him that they were kept for unlawful purposes; but the law will rather presume, in the absence of proof to the contrary, that he [the defendant] kept them for lawful purposes, for men are presumed to act in obedience to the law when their acts are not shown to be unlawful."

It is illogical to infer an illegal intent from mere possession of a case of intoxicating liquors at one's home or in one's automobile. The situation is different in respect to possession of burglary tools (Grimes v. State, 77 Ga. 762; 4 A. S. R. 112; State v. Sullivan, 34 Idaho 68, 199 P. 647, 17 A. L. R. 902); gambling devices (Wooten v. State, 24 Fla. 335, 5 So. 39, 1 L. R. A. 819; People v. Adams, 176 N. Y. 351, 68 N. E. 636, 63 L. R. A. 406, 98 A. S. R. 675, affirmed, Adams v. New York, 192 U. S. 585, 24 S. Ct. 372, 48 L. ed. 575); game birds out of season (Renfroe v. State, 140 Tex. Cr. App. 418, 145 S. W. [2d] 883); trademarked bottles in junk yards (People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 A. S. R. 668); stolen property or other fruits of crime (State v. Hutchison, 121 Minn. 405, 141 N. W. 483). In each of these cases there is a logical inference to be drawn from experience.

While we cannot subscribe to the view that all statutes creating presumptions or prima facie proof to apply in criminal prosecutions are invalid as depriving the defendant of the presumption of innocence, the right to a jury trial, or other constitutional safeguards, neither can we go to the other extreme and adopt the Wigmore doctrine that the legislative power in this respect is unlimited. The test of reasonableness must be applied to these procedural statutes as well as to statutes declaring substantive law. Notwithstanding all that is said by Dean Wigmore against applying the standard of rationality to what he terms "legislative rules of evidence" (4 Wigmore, Evidence [3 ed.] § 1356), reason, as well as respect for the rights of accused persons so firmly engrafted upon our system of jurisprudence, would prompt us to adopt the view taken by the United States Supreme Court, even were its views not binding upon us so far as federal constitutional requirements are concerned. The requirement of rationality appears to us a necessary safeguard to the constitutional rights of our citizens—a safeguard which is far more important than the practical advantage gained by our prosecutors in a few extreme cases where, under the Wigmore rule, a statutory presumption would be sustained notwithstanding its unreasonableness.

Turning, then, to the record, the question is whether the con-
nection between possession of slightly more than a case of liquor
in one's home, in a prohibition county, and of three half-pints of
gin in an automobile parked nearby, is, in common experience, so
connected with the illegal purpose of selling as rationally to justify
a presumption or prima facie case of illegal intent to sell the liquor.
If our negative answer to the question needs any argumentative
support, this may be found in the dissenting opinion in State v.
Barrett, 138 N. C. 630, 646, 50 S. E. 506, 511, 1 L.R.A.(N.S.) 626,
634. The majority opinion in that case upholds the constitution-
ality of a statute making possession of more than one quart of in-
toxicating liquor prima facie evidence of possession for sale. It
is representative of the cases involving the Wigmore doctrine that
the legislature "cannot be controlled by a judicial standard of
rationality," which cases must definitely be discarded now in view
of the holdings of the United States Supreme Court. While we
cannot guarantee the accuracy of the ratios assumed by Mr. Justice
Brown in his dissent, neither can we resist the humor and the
logic of his argument. He asks (138 N. C. 654, 50 S. E. 515,
1 L.R.A.[N.S.] 637) :

"* * * What is there in the mere possession of three pints of
liquor which would tend in the least degree to indicate that the
owner of it kept it for sale or ever intended to sell it? There are
five thousand individuals in this country who purchase liquor for
their own consumption to one who purchases it for sale. To give
the act the effect contended for it must be construed with reference
to the purpose of the one without having any regard whatever to
the purpose of the five thousand * * * the act in question is
purely arbitrary and it has been given that effect. It does not, as
the cases I have referred to, give any specified circumstances under
which the presumption shall arise. It applies to the possession of
three pints of wine with as much force as to the possession of three
barrels of whiskey. A lady who places on her dinner table for the
entertainment of her guests three pints of claret is as much a
*prima facie* criminal as the peddler who hauls around in his cov-

ered wagon a barrel of 'untaxed corn' with his pint pot tied to the spigot. The latter might justly and legally constitute a *prima facie* case of 'intent to sell;' but it would be impossible to infer such an intent from the former. The possession of three pints of liquor in ninety-nine cases out of a hundred is far more indicative of an intent to drink than of an intent to sell. Yet the statute makes no distinction. It 'feeds all out of the same spoon,' and invests all persons with equal criminality in the eyes of the law, regardless of circumstances or surroundings, reason or logic. The individual in Union County who dares to have in his residence three pints of scuppernong wine, prescribed as a tonic for his ailing wife, is in danger of having his liberty taken from him, and sent to break rock upon the county roads by virtue of a few little words in this statute. It will not do to say that no jury would convict a man under such circumstances. He is placed on the defensive. The shield and panoply of innocence is stripped from him, and he is at the mercy of twelve men. * * * This protection is given to the citizen not to prevent his conviction alone when charged with crime, but it is given him to protect him from unjust, improper, mortifying and expensive criminal prosecutions, and it is the most valuable and priceless possession the individual has. The citizens of Union County are as much entitled to it as any other citizens of North Carolina or the United States."

The fact that under § 340.66 the prima facie evidence rule comes into play only when the finding of intoxicating liquor in the possession of a defendant is "by means of search warrant" does not dispense with the necessity of establishing a rational connection between defendant's possession and his criminal intent. If, as charged in the search warrant, the possession of intoxicating liquor by a defendant in any case is "for the purpose of selling, bartering, giving away, delivering, transferring, or otherwise disposing of the same," that fact should be established by competent proof and not indirectly by the search warrant itself, which, like an indictment or information, "does not constitute proof of the commission of the offense." Tot v. United States, 319 U. S. 466,

63 S. Ct. 1244, 87 L. ed. 1523. The absurd results of a contrary rule are well illustrated in the instant case, where the sheriff procured the search warrant on his own sworn complaint charging possession with intent to sell, yet at the trial admitted that he had no proof of any prior sales by defendant.

We accordingly hold that the first clause of § 340.66, making the finding of any intoxicating liquors in the possession of any person, by means of a search warrant, prima facie evidence of criminal intent, is unconstitutional. Without it, evidence of criminal intent on the part of defendant here was entirely lacking, and there must, therefore, be a new trial. In declaring the clause unconstitutional we are not setting up a rule requiring eyewitnesses to an illegal sale or sales to authorize a conviction of the offense of illegal sale or possession of intoxicating liquors. The fact that the statute has been sterilized by our decision because violative of constitutional rights of the accused will not prevent a prosecuting officer from proving guilt by circumstantial evidence nor preclude a jury from inferring the existence of an illegal intent from the circumstances attending the possession of intoxicating liquors "if reason and experience support the inference.", Tot v. United States, 319 U. S. 467, 63 S. Ct. 1244, 87 L. ed. 1524.

■ Defendant was sentenced to a fine of $200 and a jail sentence of 90 days. He asserts that the crime defined by § 340.36 is a misdemeanor only and that a sentence of both fine and imprisonment is unauthorized. Since our construction of § 340.66 does not dispose of the case finally, it is therefore necessary that we clear up what appears to be an inconsistency in § 340.36, which, so far as here material, reads:

"Every person, * * * who shall sell or store or have in possession for sale, * * * intoxicating liquor, in any quantity, * * * in any county wherein * * * prohibition be in force, * * * shall be guilty of a *misdemeanor;* and, upon conviction thereof, punished by a fine of not less than $50.00 and the cost of prosecution *and* be imprisoned in the county jail for not less than 30 days; * * *." (Italics supplied.)

The apparent inconsistency arises from the fact that § 610.01 (Mason St. 1927, § 9906), which defines a misdemeanor as "Every crime punishable by fine not exceeding $100.00, *or* by imprisonment in a jail for not more than 90 days," further recites: "Every other crime is a gross misdemeanor."

At common law, the term "misdemeanor" was applied generally to all crimes and offenses below the grade of felony. 22 C. J. S., Criminal Law, § 7; 1 Russell, Crimes, p. 3. Two classes of misdemeanors were, however, recognized: (1) Those which were of a heinous nature and which might therefore be punished corporally, and (2) those which were not heinous. State v. Lytle, 138 N. C. 738, 51 S. E. 66. The terms "gross misdemeanor," "high misdemeanor," and the like are of statutory origin, invented to permit a similar distinction between petty offenses and those of a more serious nature.

Absent any constitutional definition or classification, it is competent for the legislature, in creating or defining an offense, to name it, classify it, and prescribe the punishment for it, subject only to the limitation that excessive fines shall not be imposed, nor cruel or unusual punishments inflicted. Minn. Const. art. 1, § 5; State v. Lytle, *supra.* Within these limits, the legislature may prescribe any form of punishment for a violation of the liquor laws or for any other offense. It may, if it so chooses, fix a reasonable minimum sentence and may prescribe that such minimum sentence shall include both a fine and imprisonment in the county jail.

Past experience has taught legislators, prosecutors, and courts alike that, if illegal traffic in intoxicating liquors is to be effectively curbed, the punishment of offenders must include both fine and jail sentence. Penalties of both fine and imprisonment in jail for violations of liquor laws have been provided for in our statutes at least since 1905, and numerous convictions under these statutes have been upheld on appeal. See, R. L. 1905, § 1519, G. S. 1913, § 3109; State v. Meyers, 132 Minn. 4, 155 N. W. 766; State v. Kruse, 137 Minn. 468, 163 N. W. 125; State v. Mamer, 139 Minn. 265, 166 N. W. 345. In State v. Radke, 139 Minn. 276, 277, 166 N. W. 346,

347, defendant was convicted of selling liquor without a license and sentenced to 60 days in the county jail without a fine. In disposing of his contention that the statute required both fine and imprisonment, this court said: "Defendant cannot escape the sentence imposed because of this piece of good fortune. He may apply to the court to correct the sentence. Should he do that, he will doubtless receive the sentence that the statute requires." See, also, State v. Mamer, *supra*.

Statutory nomenclature does not necessarily determine the grade or class of a crime. Calling an offense a misdemeanor does not make it so when the punishment prescribed makes it a gross misdemeanor or felony. State v. Harwood, 206 N. C. 87, 173 S. E. 24; State v. Newell, 172 N. C. 933, 90 S. E. 594. Where the words of a statute prescribe as punishment both fine and imprisonment, the offense is a gross misdemeanor, regardless of the nomenclature used, and both forms of punishment must be inflicted. Bishop, Criminal Law, § 941; 8 Am. & Eng. Enc. of Law (2 ed.) 281; United States v. Vickery, 1 Har. & J. (Md.) 427, Fed. Cas. No. 16,619. There is in such case no occasion for construing the word "and" to mean "or," for there is no ambiguity to be removed—"the punishment controls the definition." State v. Hyman, 164 N. C. 411, 415, 79 S. E. 284, 286; State v. Pluth, 157 Minn. 145, 151, 195 N. W. 789, 791.

It follows that under § 340.36 a defendant convicted of the crime of selling intoxicating liquor in a prohibition county must be sentenced to both a fine and imprisonment.

Reversed and new trial granted.

YOUNGDAHL, JUSTICE (dissenting).

Minn. Const. art. 6, § 14, provides: "Legal pleadings and proceedings in the courts of this State shall be under the direction of the legislature." The legislature cannot constitutionally make one fact conclusive evidence of another if the former is not, in and of itself conclusive. Vega Steamship Co. v. Consolidated Elev. Co. 75 Minn. 308, 77 N. W. 973, 43 L. R. A. 843, 74 A. S. R. 484; Meyer v. Berlandi, 39 Minn. 438, 40 N. W. 513, 1 L. R. A. 777, 12 A. S. R. 663; 20 Am. Jur., Evidence, § 10. We are, however, committed in

this state to the rule that the legislature may provide that certain facts shall be prima facie evidence of other facts if there is a natural or rational evidentiary relation between the facts proved and those presumed. State ex rel. Robertson v. New England F. & C. Co. 126 Minn. 78, 147 N. W. 951, 52 L.R.A.(N.S.) 932, Ann. Cas. 1915D, 649; Thorpe v. Pennock Merc. Co. 99 Minn. 22, 108 N. W. 940, 9 Ann. Cas. 229. Such statutes have been held to be within the well-settled power of the legislative body to change the rules of evidence and do not infringe upon the rights of the judiciary or violate any other provisions of the federal or state constitutions. 20 Am. Jur., Evidence, § 9. This power of the legislature is not confined to civil cases.

"The power of the legislature to declare one fact presumptive or prima facie evidence of another is not confined to civil cases. In criminal prosecutions the legislature may, with some limitations, enact that when certain facts have been proved, they shall be prima facie evidence of the existence of the main facts." *Id.* § 11, and cases under note 6.

There is agreement that in criminal cases a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, for in such case the due process protection of the Fifth and Fourteenth Amendments of the United States constitution would be offended. There can be no legitimate quarrel with the assertion, moreover, that we should be guided by the following rule set forth in Tot v. United States, 319 U. S. 463, 467, 63 S. Ct. 1241, 1245, 87 L. ed. 1519, 1524:

"* * * a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed, if the inference of the one from proof of the other is arbitrary because of lack of connection between the two in common experience. * * * But where the inference is so strained as not to have a reasonable relation to the circumstances of life as we know them, it is not competent for the legislature to create it as a rule governing the procedure of courts."

But I am unable to agree with the conclusion of the majority that the Tot case is justification for declaring invalid the prima facie rule under the statute here considered as applied to the facts in the case at bar. That case, in my opinion, is so clearly distinguishable on the facts from the situation here that there is no reasonable basis for holding that the conclusion reached by that court should be applied here in ruling out the *"prima facie"* provision under consideration.

A careful study of the Tot case leads me to the conclusion that it cannot properly serve as authority for declaring invalid the statutory provision under the facts here. It will be observed at the outset that the Tot case involved a prosecution under the federal firearms act (15 USCA, § 902[f]), making it unlawful for any person who has been convicted of a crime of violence to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. Such a prosecution is quite different from one brought in a dry county under a state law making it an offense to have liquor in one's possession for the purpose of sale. Judicial notice may be taken of the problems of enforcement that have arisen under liquor laws, which distinguish them from other statutes.

A brief consideration of the evils sought to be corrected by congress through the federal firearms act is necessary in order fully to comprehend the distinction between the prima facie provision under that law and the prima facie provision under the liquor law here involved. Individuals convicted of crimes of violence, roaming from state to state, had got beyond the control of local authorities to such an extent as to constitute a serious threat to our national security and presented a necessity for corrective legislation. Because of the difficulty in purchasing firearms locally, an ex-convict who wished to obtain them could only do so at the source of manufacture at some distant point and have them shipped to him in interstate commerce. United States v. Platt (D. C.) 31 F. Supp. 788. Thus the federal firearms act came into being, providing, *inter alia,* that proof of a prior conviction of a crime of

violence and proof of the defendant's possession of a firearm subsequent to such conviction should constitute prima facie or presumptive evidence that the firearm was shipped, transported, or received in interstate or foreign commerce.

The question in the Tot case was stated by the court thus (319 U. S. 466, 63 S. Ct. 1244, 87 L. ed. 1523):

"* * * There remains for decision the question of the power of Congress to create the presumption which § 2(f) declares, namely, that, from the prisoner's prior conviction of a crime of violence and his present possession of a firearm or ammunition, it shall be presumed (1) that the article was received by him in interstate or foreign commerce, and (2) that such receipt occurred subsequent to July 30, 1938, the effective date of the statute."

Applying the rule so laid down, the question was whether there was a rational connection between the fact proved (possession of the firearm) and the ultimate fact presumed (that the firearm was shipped, transported, or received in interstate commerce subsequent to July 30, 1938). And was the inference of transportation or receipt in interstate commerce since that date from the fact of possession so unreasonable as to be purely an arbitrary mandate because of lack of connection between the two in common experience?

To permit a trier of fact to consider a prima facie rule under such a statute, where proof that the firearm has been received in interstate commerce is not required, is a vitally different thing from permitting the prima facie rule to be invoked under a law making it an offense to possess liquor with intent to sell it. It will be observed that under the firearms statute the presumption is not that the defendant received the firearm with guilty knowledge that it had been transported in interstate commerce, but the presumption created is that, since he possessed it, it had theretofore been transported or shipped in interstate commerce. The government had to prove only that the defendant, having previously been convicted of a crime of violence, had in his possession a pistol. Then the law presumes that it was transported in interstate commerce.

In the instant case the presumption embraces the intent of the person who possesses the liquor. It seems obvious to me that there is a real difference between such a federal statute and a state law which provides the finding of intoxicating liquor, by means of a search warrant, shall be prima facie evidence that the same was kept for the purpose of sale.

I do not overlook the fact that in the Tot case the court said that the rational connection test is the controlling test and the convenience test but a corollary. The court, however, further stated in this connection (319 U. S. 469, 63 S. Ct. 1246, 87 L. ed. 1525):

"* * * The argument from convenience is admissible only where the inference is a permissible one, where the defendant has more convenient access to the proof, and where requiring him to go forward with proof will not subject him to unfairness or hardship."

It seems to me it can reasonably be said that to require a defendant to go forward with proof that he had not acquired or received a firearm in interstate commerce since the effective date of the act is quite different from requiring a defendant to go forward with proof regarding his lack of intention to sell liquor which was found in his possession under a search warrant.

Coming to the facts here, it appears that upon the issuance of a search warrant under the statute, pursuant to a complaint signed by the sheriff of Freeborn county—a dry county—a search was made of defendant's premises, and in the garage attached to the house was found a case of Scotch whiskey, an empty carton marked with the trademark "Wilken Reserve Blended Whiskey," and three half-pints of gin locked in the glove compartment of an automobile parked nearby.

It will be noted that there is a provision in § 340.65 (§ 3200-81) for the issuance of a search warrant only after a complaint has been signed under oath. Such a provision is wholly absent from the firearms statute and in many of the statutes of states which have sustained a similar prima facie provision under a charge of

having liquor in possession for sale. State v. Lapointe, 81 N. H. 227, 123 A. 692, 31 A. L. R. 1212, and annotated cases. The majority opinion attaches little importance to the search warrant provision and brushes it aside with the comment that the sheriff conceded that he had no evidence of sales. Of course, if he had evidence of sales, it would have been unnecessary to charge defendant with the offense of having liquor in possession for sale. The very purpose of including that charge in the statute as an offense is to permit of conviction on circumstantial evidence of sales where direct evidence thereof is lacking and difficult to obtain. But it is assumed that a public officer or a private citizen will not sign a complaint under oath charging a person with the offense of having liquor in possession for sale unless some information has come to him that makes it appear reasonable that such an offense has been committed. It is true, the complaint does not constitute evidence any more than an indictment. Yet it affords protection to the individual so that he will not be harassed in his possession of liquor without the foundation being laid for a lawful search. It seems to me, considering the statute with the search warrant provision, that the finding of the case of Scotch whiskey, the carton, and the three half-pints of gin in the auto supplies a rational connection between those facts which were proved and the fact presumed that the liquor was kept for the purpose of sale.

Another distinction will be noted between the firearms statute and the one here. Under the federal statute, a defendant is always under the handicap of having his credibility affected if he testifies, because a conviction of a crime of violence must be shown before the prima facie rule can take effect, while under the statute here defendant's credibility is only affected if there has been a conviction, and the showing of such a conviction is not a prerequisite. The record here shows that the state offered to show a prior conviction, but the offer was properly refused by the trial court, since that could only be shown as affecting defendant's credibility; and, inasmuch as defendant did not take the stand to testify, there was no opportunity afforded the state to prove such conviction.

Of course, mere possession of liquor is not an offense under our statute. I see no danger under this prima facie provision of convicting an individual who, *bona fide,* has the liquor in his possession for personal use. It is not a question of how we might decide the fact issue were we sitting as triers of fact and determining whether the liquor was kept for sale. The amount of the liquor found, of course, was not inconsistent with personal use. It may well be true, moreover, that even the three half-pints of gin in the auto might, under some circumstances, be not possessed for the purpose of sale. It seems to me that we may reasonably take judicial notice of the fact that even an individual of extraordinary thirst and unusual capacity for intoxicating beverages does not find it necessary for personal use to have in possession in his auto three half-pints of gin. This circumstance, considered in connection with the case of Scotch whiskey and the empty carton in the garage, establishes, in my opinion, a reasonable connection between the fact proved and the presumption that the liquor was kept for sale.

Defendant did not see fit to testify in his own behalf. That was his privilege. His failure to do so cannot be considered as evidence of guilt. Yet he had a fair opportunity to present his defense and submit all the facts to the jury. The jury was properly charged that defendant was presumed to be innocent (despite the prima facie presumption under the statute), and it was incumbent upon the state to prove his guilt beyond a reasonable doubt.

"* * * So long as the legislature, in prescribing rules of evidence in criminal cases or defining presumptions therein, leaves an accused a fair opportunity to make his defense and submit all the facts to the jury for evaluation, its enactments are viewed as constitutional by the courts." 20 Am. Jur., Evidence, § 11; Meadowcroft v. People, 163 Ill. 56, 45 N. E. 991, 35 L. R. A. 176, 54 A. S. R. 447; State v. Beach, 147 Ind. 74, 43 N. E. 949, 46 N. E. 145, 36 L. R. A. 179; People v. Cannon, 139 N. Y. 32, 34 N. E. 759, 36 A. S. R. 668; State v. Rothrock, 45 Nev. 214, 200 P. 525.

Similar provisions under liquor statutes of other states making possession prima facie evidence of intent to sell, even absent a search warrant provision, have been sustained by the great weight of authority. 31 A. L. R. 1212; 30 Am. Jur., Intoxicating Liquors, § 416.

I quite agree that the constitutional rights of defendant should be adequately protected. It is axiomatic that due process of law, preserved for all by our constitution, demands that the courts stand guard, to the end that this constitutional shield deliberately planned and prescribed for the benefit of every person shall be forever preserved. On the other hand, it is equally imperative that courts do not impair the legislative function of declaring reasonable rules which have for their purpose the enforcement of law and the making of the country an orderly, self-respecting, and law-abiding place in which to live.

PETERSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Youngdahl.