**STATE of Minnesota, Respondent,**

v.

**Allen Earl ELI, Appellant.**

**No. C9–86–1189.**

Court of Appeals of Minnesota.

March 24, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, John Valen, Morrison Co. Atty., Gregory K. Larson, Asst. Co. Atty., Little Falls, for respondent.

John D. Ellenbecker, St. Cloud, for appellant.

Heard, considered, and decided by PARKER, P.J., and HUSPENI and FORSBERG, JJ.

## OPINION

HUSPENI, Judge.

Following a trial to the court, appellant Allen Eli was found guilty of two counts of criminal vehicular operation resulting in death under Minn.Stat. § 609.21, subd. 1(3) (1984). On appeal Eli argues that the evidence of negligence was insufficient and that the State failed to prove that the blood sample admitted into evidence was actually Eli's. We affirm.

## FACTS

On September 13, 1985, appellant Allen Eli was involved in a head-on collision with a car driven by Delroy Bleichner. Delroy and his brother Darvin were both killed instantly. Eli survived and was eventually charged with four counts of criminal vehicular operation resulting in death.

A deputy medical examiner for Morrison County testified that he was called to the accident and determined that Delroy Bleichner, aged 19, and Darvin Bleichner, aged 17, were dead at the scene as a result of the accident. Neither victim had been wearing a safety restraint. Lab results of blood tests conducted on the two victims indicated that both tested negative for drugs and alcohol.

Daniel Eastvold, a deputy with the Morrison County Sheriff's Department, interviewed Eli while he was hospitalized. Eli admitted to Eastvold that he had been drinking before the accident, but said he did not think he was too intoxicated. Eastvold also testified that he had been responsible for sending a blood sample identified as Eli's to the Bureau of Criminal Apprehension by U.S. mail. Eastvold acknowledged that he was not present when the blood sample was drawn.

The majority of testimony about the circumstances of the accident came from Trooper Knute Hegna of the Minnesota State Highway Patrol. Hegna testified that he had taken an 80 hour State Patrol course and was a trained reconstruction specialist. He had conducted eight reconstructions in 1985 and one in 1986. Hegna said he arrived on the accident scene approximately fifteen minutes after the accident had occurred. He saw a blue Dodge Dart (the Bleichner vehicle) on the west side of the road and a white Impala (Eli's vehicle) half on the road and half in the ditch on the east side of the road. He indicated that the stretch of road on which the accident occurred was straight and dry and visibility was clear that night. Further, the scene had not been disturbed when he began his investigation.

Hegna testified that the speed limit for that stretch of road was 55 m.p.h., but he could not determine the speed the vehicles were traveling at the time of impact because there were no skid marks. The momentum of Eli's car had driven the Bleichner car straight back which indicated to Hegna that Eli was going faster than the other car, however he could not say how much faster.

The absence of skid marks indicated to Hegna that the drivers were not aware that they were going to collide because neither took any evasive action and there were no signs that either vehicle attempted to brake. From the scratches in the road Hegna could tell that the Bleichner car was heading south and Eli was heading north at the time of impact. Hegna stated that the place of impact could be determined from the gouges in the road and that those gouges showed that the impact had occurred in the southbound lane, the lane in which the Bleichner vehicle was traveling. He said that there was no chance that the cars were traveling other than as he had described.

From an examination of both cars' headlights, Hegna determined that at least one light, on the driver's side of the Bleichner car, was on when the impact occurred. The other headlights had all been destroyed so it was impossible to determine if they were on at the time of the accident.

Hegna testified that there was no indication that either car had experienced a flat or blown out tire, because when this occurs the tire rim will leave marks on the pavement. He said he had checked for any such marks and found none. Marks on the road did not show any signs that there had been any trouble with either vehicle or that there had been any sudden swerving before the collision. Hegna acknowledged that he did not inspect the tires on the vehicles; however, the damage to the vehicles was so extensive that Hegna believed an examination was not likely to render any significant information.

The State also called Debra Springer, a BCA lab analyst. Springer had received a blood sample kit in the mail with an information card attached that said the sample was from Eli. Springer testified that her testing of the blood sample showed a blood alcohol level of .18. Defense counsel made no objection to the admission of this evidence.

Eli testified and traced his drinking pattern the day of the accident. Between 1:00 p.m. and 2:00 p.m. he had two beers with his lunch. Eli then ran some errands with his girlfriend. At approximately 5:00 p.m. Eli and his girlfriend went to the Legion Club in Hillman, Minnesota, where he had one beer and one mixed drink. They left for the B & L Bar in Hillman around 6:30 p.m., and Eli had three or four mixed drinks there before he left the bar at 8:30 p.m. At that time Eli headed for another bar where he planned on meeting his girlfriend who had gone to a wedding rehearsal. Eli testified that he did not feel "hammered" when he left the B & L Bar but that he felt great.

Eli remembered very little about what occurred after he left the B & L Bar. At trial he testified that he remembered turning on the car's headlights before he left the parking lot; however, he had not remembered this fact in his earlier statements. He said that because the car started to shimmy at 55 m.p.h. and became worse at 60 m.p.h., he believed he was going between 50 and 55 m.p.h. The next thing Eli remembered was waking up in the hospital on September 20.

The car Eli was driving at the time of the accident belonged to his girlfriend. She testified that the car had some mechanical problems such as needing new shocks and realignment. In addition she stated that Eli had replaced the right rear tire a few days before the accident with a used tire they purchased for $16 and that this had added a vibration in the steering wheel that increased as the speed of the car increased.

The trial court determined that Eli had negligently operated a motor vehicle with an alcohol concentration over .10. He was found guilty of two counts under Minn. Stat. § 609.21, subd. 1(3).

## ISSUES

1. Was there sufficient evidence to support the trial court's finding that Eli drove his car in a negligent manner causing the accident?

2. Was there sufficient evidence to support the trial court's finding that Eli had a blood alcohol concentration on the night of the accident of .18?

## ANALYSIS

### I.

■ To prove its case the State relied primarily on circumstantial evidence and Trooper Hegna's interpretation of that evidence. Eli argues that this circumstantial evidence was insufficient to prove beyond a reasonable doubt that he was negligent in operating his vehicle. We cannot agree.

A criminal conviction may be based on circumstantial evidence if the evidence reasonably supports an inference of guilt. *State v. Combs*, 292 Minn. 317, 321, 195 N.W.2d 176, 178 (1972). Giving due regard to the presumption of innocence, such a conviction will be sustained

only when the reasonable inferences from such evidence, viewed most favorably to the verdict, are consistent with the defendant's guilt and inconsistent with any rational hypothesis except that of his guilt.

*State v. Diamond,* 308 Minn. 444, 447, 241 N.W.2d 95, 98 (1976). This court must view the evidence in the light most favorable to the State and assume that the trier of fact believed the State's witnesses and disbelieved any contrary evidence. *Id.* Due deference is given to the trier of fact's opportunity to evaluate the circumstantial evidence. *State v. Anderson,* 379 N.W.2d 70, 75 (Minn.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 2248, 90 L.Ed.2d 694 (1986).

Viewing the record in light of this standard we conclude that there is sufficient evidence to sustain the trial court's finding that Eli was negligent in operating his motor vehicle. Trooper Hegna's reconstruction of the accident from the marks on the roadway showed Eli's vehicle was on the wrong side of the road at the time of the accident. At least one of the headlights on the Bleichner vehicle was illuminated at the time of the accident, indicating that the car was visible to Eli. Also, Eli drove the vehicle knowing that it had mechanical problems that impaired its operation.

Eli speculates about other possible causes for the accident such as a flat tire. However, there is no evidence in the record to support his speculations and no evidence "that was consistent with any reasonable hypothesis of [Eli's] innocence or inconsistent with his guilt." *State v. Turnipseed,* 297 N.W.2d 308, 314 (Minn.1980). The evidence need not exclude all possibilities that Eli was not negligent, but it must negate any "reasonable hypothesis" of Eli's innocence. *Id.* The evidence in this case meets this strict standard.

At oral argument Eli asserted that *State v. Kelly,* 218 Minn. 247, 15 N.W.2d 554 (1944) applied to the present case. We disagree. In *Kelly* the supreme court held a statute unconstitutional which made the finding of any intoxicating liquors in the possession of any person, by means of a search warrant, prima facie evidence of criminal intent * * *.

*Id.* at 264, 15 N.W.2d at 563. The court noted that the effect of the statute was to destroy the presumption of innocence by statutorily declaring an act prima facie evidence of guilt when the act itself was wholly innocent. *Id.* at 259–260, 15 N.W.2d at 561. In the present case the trial court imposed no statutory presumptions but rather inferred the commission of a crime from various circumstances. Some of those circumstances, such as driving on the wrong side of the road, cannot be characterized as wholly innocent acts.

## II.

Eli also claims that there was not sufficient evidence to prove he had a blood alcohol concentration over .10 because the State failed to prove that the blood sample analyzed was in fact Eli's blood. At trial the State offered into evidence only the information card accompanying the blood sample when it arrived at the BCA lab that identified Eli as the donor and the testimony of the lab analyst who tested the blood sample.

Eli's challenge to the identity of the donor of the blood sample was a foundational objection that should have been raised at the time the test results were introduced. *See State v. Sneva,* 353 N.W.2d 134 (Minn. 1984). Because this alleged error does not constitute plain error or an error of fundamental law, defense counsel's failure to object when the evidence was introduced precludes further review by this court. *State v. Malaski,* 330 N.W.2d 447 (Minn. 1983).

## DECISION

The evidence is sufficient to sustain the trial court's findings that appellant operated a motor vehicle in a negligent manner while having an alcohol concentration of .10 or more.

Affirmed.